## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

CRYSTAL BUSTER,

      Plaintiff,

v.                                        Case No. 2:21-cv-01208-MLG-JHR

BOARD OF COUNTY COMMISSIONERS FOR
LINCOLN COUNTY, CORRECTIONAL
SOLUTIONS GROUP, LLC, CARLOS MORALES,
Individually and in his official capacity, CARLY
REYNOLDS, individually, ANITA HITTLE,
individually, and STEVE CHAVEZ, individually,

      Defendants.

### DEFENDANTS BOARD OF COUNTY COMMISSIONERS FOR LINCOLN COUNTY, CORRECTIONAL SOLUTIONS GROUP, LLC, CARLOS MORALES IN HIS OFFICIAL CAPACITY, AND STEVE CHAVEZ'S  MOTION FOR SUMMARY JUDGMENT REGARDING COUNTS I, II, AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT

COME NOW Defendants the Board of County Commissioners for Lincoln County, Correctional Solutions Group, LLC, Carlos Morales in his official capacity, and Steve Chavez, and hereby, Pursuant to Fed.R.Civ.P. 56, move for Summary Judgment in their favor and against Plaintiff Crystal Buster on Counts I, II, and IV of Plaintiff's First Amended Complaint (Document 16). Defendants are entitled to Judgment as a matter of law and uncontested fact on each of the counts alleging violation of Plaintiff's Constitutional rights, for reasons set forth herein and in the following Memorandum of Points and Authorities. Defendants have conferred with Plaintiff and this motion is opposed.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Crystal Buster was a pretrial detainee at the Lincoln County Detention Center. Plaintiff has alleged various violations of her constitutional rights arising from her placement in a medical observation cell and in connection with her medical treatment and conditions of her custody. The evidence cannot support a finding that Plaintiff's rights were violated.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Martinez v. CO2 Services, Inc.*, 12 Fed. Appx. 689 (10th Cir. 2001)(interpreting New Mexico law), *citing Kaul v. Stephan*, 83 F.2d 1208, 1212 (10th Cir. 1996). Summary judgment is appropriate if there is not sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Biester v. Midwest Health Servs., Inc.*, 77 F.2d 1264, 1266 (10th Cir. 1996).

To be entitled to summary judgment, defendant is not required to disprove or negate Plaintiff's claims, but need only point to an absence of evidence to support those claims. *Martinez*, *supra*, *citing Kaul*, *supra.* In order to defeat summary judgment, plaintiff may not rest upon his pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which he carries the burden of proof. *Id.* Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986).

## STATEMENT OF FACTS

1.     Plaintiff Crystal Buster was treated at Lincoln County Medical Center the night of December 24, 2019, after suffering an injury during her arrest. Plaintiff was released and cleared for incarceration. (**Exhibit A**, Deposition of A. Hittle, pp. 70:19-76:8 and **Exhibit B**, CBUSTER 107.)

2.     Plaintiff was then taken to Lincoln County Detention Center (LCDC) in the early hours of December 25, 2019. (*Id.*)

3.     Plaintiff was evaluated by nursing staff and assigned to medical segregation due to a broken knee injury. (*Id.*, and **Exhibit C**, Deposition of C. Estrada, p. 52:16-20.)

4.     Two holding cells in the booking area at LCDC were used for medical observation. The decision to change from using cells located in the medical area for medical observation to the holding cells had been made by the health services administrator Carly Reynolds with participation by the jail operator Correctional Services Group, Inc. and Mr. David Stanfield. (**Exhibit D**, Deposition of C. Morales, 54:21-61:24.)

5.     Health Services Director Carly Reynolds testified that an inmate with a broken knee should be separated from other inmates who may take advantage of them. (**Exhibit E**, Deposition of C. Reynolds, pp. 175:25-176:12.)

6.     Corrections officer Carolina Estrada testified that Plaintiff was in medical segregation because of her knee injury and use of wheelchair. She testified that there was a policy not to allow a detainee in a wheelchair in the general population not just for their protection but to protect other inmates. Metal objects can be used to make a shank and put other inmates at risk. (**Exhibit C**, Deposition of C. Estrada, pp. 55:15-59:22.)

7.    Plaintiff agrees that she was placed in the cell for medical reasons and that she was not physically fit to go into the general population when she was first incarcerated. (**Exhibit F**, Deposition of C. Buster, Vol. II, p. 248:15-24.)

8.    When inmates including Plaintiff were assigned to medical observation, the decision to do so was made by the Health Services Administrator Carly Reynolds. The warden would sign off on the decision but did not have authority to change their medical housing assignment. (**Exhibit G**, Deposition of K. Chavez, 20:19-23; **Exhibit H**, Deposition of C. Morales, Vol. II, pp. 182:3-7.)

9.    Plaintiff was treated again at the Lincoln County Medical Center for follow up on her knee by Dr. Vu on December 26, 2019. (**Exhibit I**, CBUSTER 097.) Neither time did the treating doctors diagnose her with withdrawal or state that she should be on a withdrawal protocol. (*Id.* and **Exhibit B**, CBUSTER 107.)

10.    Plaintiff was observed by medical staff to be behaving strangely on December 29, 2019.  (**Exhibit A**, Deposition of A. Hittle 155:18- 156:4, 157:21-158:10.)

11.    Plaintiff was taken to the Lincoln County Medical Center Emergency Room on December 30, 2019, for treatment and diagnosed with withdrawal from alcohol and benzodiazepines. Plaintiff was prescribed a withdrawal protocol including medication and instructions that "Patient is safe to be monitored while incarcerated at the Lincoln County Detention Center. She will require close observation due to withdrawal ·symptoms." (**Exhibit A**, Deposition of A. Hittle, pp. 175:13-176:23  and **Exhibit J**, CBUSTER 116.)

12.     Plaintiff was placed with cellmate Beatrice Parraz from January 11 to January 15, 2019. She was placed with Presli Stevenson from January 22 onward. (**Exhibit K**, CSG 1752-53 and **Exhibit L**, Deposition of S. Chavez, 75:1-5, 88:12-23.)

13.     Plaintiff testified that she spoke to Warden Morales when Beatrice was removed from her cell for a court hearing. She testified that she asked Warden Morales to keep Beatrice as her cellmate so she could have someone with her for human contact, and Warden Morales agreed. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 261:11- 262:7.)

14.     Warden Morales testified that detainees who were placed in medical segregation would not have the same restrictions as detainees in disciplinary segregation. Someone in medical segregation would still have access to visitation, phone calls, commissary, and access to their personal property, which all may be restricted for someone in disciplinary segregation. He testified that he would not have restricted access to recreation or showers for detainees in medical or disciplinary segregation. (**Exhibit D**, Deposition of C. Morales, pp. 72:19-76:22.)

15.     Detainees in the holding cells would be given one hour of recreation. (**Exhibit D**, Deposition of C. Morales, pp. 79:10-17.)

16.     The door of the holding cell has a window with a metal shutter or door that can cover the window. Warden Morales testified that he instructed staff to keep the door to the window open. (**Exhibit D**, Deposition of C. Morales, pp. 76:23-79:9.)

17.     Warden Morales testified that he was aware Plaintiff was in medical observation for 50 days, that he had visited Plaintiff once or twice a week, and that she made no complaints to him during these visits. (**Exhibit D**, Deposition of C. Morales, pp. 87:1-89:7.)

18.    Warden Morales testified that when he met with plaintiff she was clean. (**Exhibit D**, Deposition of C. Morales, pp. 103:13-17.)

19.    Warden Morales testified he was not trained in the effects of solitary confinement. (**Exhibit D**, Deposition of C. Morales, pp. 138:18-139:3.)

20.    Warden Morales testified he recalls the toilet backing up once, and calling an outside plumber. (**Exhibit D**, Deposition of C. Morales 162:22-165:10.) Plaintiff testified that her toilet backed up one time when she first arrived at LCDC and was repaired quickly. (**Exhibit M**, Deposition of C. Buster, pp. 167:24- 168:13.)

21.    Plaintiff testified that the water to her toilet was turned off after her cellmate attempted to flush papers, and from that time onward the toilet was flushed from outside the cell. (**Exhibit M**, Deposition of C. Buster, pp. 167:7-23.)

22.    Plaintiff was allowed to have 10 showers only during the 54 days she was in restricted housing. (First Amended Complaint at Paragraph 156.) Plaintiff then testified at her deposition that she was allowed to have 3 showers in 54 days. (**Exhibit M**, Deposition of C. Buster, pp. 131:1-7.) She testified that she did refuse to shower once when offered, and asked other times and was told that she needed to have a nurse present to shower. (**Exhibit M**, Deposition of C. Buster, pp. 141:23-142:21.) She testified that she took a shower 2 times and that at that point she was able to walk by herself. (**Exhibit M**, Deposition of C. Buster, p. 141:13-22.)

23.    Plaintiff testified that she was offered hygiene products. (**Exhibit M**, Deposition of C. Buster, p. 142:22-23.)

24.     Plaintiff testified that issues she had with urinating on herself or having menstrual blood on herself were all during her first week of detention. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 229:24-232:14.)

25.     Plaintiff testified she fell trying to go to the toilet only one time. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 232:25-233:16.)

26.     Plaintiff testified she was aware that all windows were painted over at LCDC, not just those in the medical observation cell, as she knows from times she was incarcerated in other areas of the same jail. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 266:23-267:15.)

27.     Plaintiff testified that she believed Officer Chavez was responsible for banging on the cell door and making sounds because she heard his voice laughing. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 238:2-241:2.)

28.     Plaintiff testified that she missed her pain medication only once, on the day that video cameras were installed in her cell. (**Exhibit M**, Deposition of C. Buster, pp. 179:14-180:8.)

29.     Plaintiff testified that no doctor has ever told her that her knee got worse during incarceration. (**Exhibit M**, Deposition of C. Buster, pp. 166:22-167:6.)

30.     Plaintiff has had little or no treatment for psychological conditions after her incarceration. She testified that she went one time to a psychiatrist and did not go back, learned to manage her panic attacks. She also completed a court-ordered 6 month program for substance abuse. She had no other treatment. (**Exhibit M**, Deposition of C. Buster, pp. 194:24-195:25.)

31.     Plaintiff testified she did not resume regular use of Xanax. (**Exhibit M**, Deposition of C. Buster, pp. 170-171.) She did violate her probation by using Xanax one time, by using Xanax

that she had left over from her last prescription. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 251:19-252:3.)

32.  Plaintiff testified she no longer drinks. (**Exhibit M**, Deposition of C. Buster, pp. 196:1-5.)

33.  Plaintiff testified she now uses medical cannabis 1-4 times a day. (**Exhibit F**, Deposition of C. Buster, Vol. II, pp. 243:18-244:12.)

# I.    COUNT I - VIOLATION OF PROCEDURAL DUE PROCESS (DEFENDANT MORALES IN HIS INDIVIDUAL AND OFFICIAL CAPACITY)

## A.    Introduction

Plaintiff has alleged that Warden Carlos Morales violated her Fourteenth Amendment rights to due process by placing her and keeping her in "solitary confinement" while she was a pre-trial detainee at Lincoln County Detention Center from December 25, 2019 through February 24, 2020.

Plaintiff alleges that she was "placed into solitary confinement and remained in isolation for the entirety of her detention." (Complaint, Document 16, Paragraph 152.) She alleges that she was not afforded a hearing before being placed in solitary confinement, that she did not have access to services allowed to the general population, and that the conditions of her confinement were atypical. (*Id.*, 153-158.)

Plaintiff alleges the conditions "were so degrading, dehumanizing, and torturous that they amounted to de facto punishment of a pretrial detainee." (*Id.*, 160.)

Plaintiff alleges that Warden Carlos Morales acted with deliberate indifference to Plaintiff's Constitutional rights. (*Id.*, 163.)

Plaintiff alleges that Warden Carlos Morales denied Plaintiff her Fourteenth Amendment rights to due process of law by keeping Plaintiff in solitary confinement for a lengthy period without periodic classification review. (*Id.*, 164.)

The evidence shows that Plaintiff's assignment to the medical observation cell was not punitive. The placement was due to her medical needs. She had arrived at the LCDC with an injury to her knee that prevented her from walking and left her in severe pain. Plaintiff testified that she understood she was not physically fit to enter the general population at the LCDC at the time she entered.

The evidence shows that Warden Morales was aware that Plaintiff was kept in medical isolation, had visited her personally, was informed by medical staff of her status, and that Plaintiff communicated no complaints to Warden Morales about the conditions of her confinement.

The evidence shows that Plaintiff was assigned to the general population women's pod 54 days after her admission and remained there until her release.

The evidence cannot show that Plaintiff was subjected to punishment without due process.

The evidence cannot show that Warden Morales acted with deliberate indifference in connection with Plaintiff's placement or reassignment.

### B.    Applicable Law Regarding Due Process

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race. Prisoners may also claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L. Ed. 2d 935 (1974) (citations omitted).

The Supreme Court has determined that the Due Process Clause protects a detainee from certain conditions and restrictions of pretrial detainment. *Bell v. Wolfish*, 441 U.S. 520, 533, 99 S.

Ct. 1861, 1871, 60 L. Ed. 2d 447 (1979). "[T]he proper inquiry is whether those conditions amount to punishment of the detainee."

A person lawfully committed to pretrial detention has not been adjudged guilty of any crime. He has had only a "judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." And, if he is detained for a suspected violation of a federal law, he also has had a bail hearing. Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535–37, 99 S. Ct. 1861, 1872–73, 60 L. Ed. 2d 447 (1979). And See *Wolff v. McDonnel*, 418 U.S. 539, 556, 94 S. Ct. 2963,

2975, 41 L. Ed. 2d 935 (1974) ("[T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. )

> "The determination of whether a condition of pretrial detention amounts to punishment turns on whether the condition is imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose.. If an act by a prison official, such as placing the detainee in segregation, is done with an intent to punish, the act constitutes unconstitutional pretrial punishment. Similarly, "if a restriction or condition is not reasonably related to a legitimate [governmental] goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." On the other hand, restraints that "are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting." Obviously, "ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Thus, "no process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons." *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citations omitted), opinion vacated in part on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006)

A pretrial detainee like Plaintiff may be subject to conditions and restrictions of incarceration so long as they do not amount to punishment prior to a lawful conviction. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005); *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979).

Absent a showing of expressed intent to punish by jail officials, the court must analyze whether the restriction is reasonably related to a legitimate governmental objective. *Bell v. Wolfish*, 441 U.S. at 538-39. If the conditions are not reasonably related to a legitimate governmental purpose, the court permissibly may infer that the purpose is punishment. *Peoples*, 422 F.3d at 1106.

If there is no intent to punish, "a plaintiff may still prove unconstitutional punishment by showing that the restriction in question bears no reasonable relationship to any legitimate governmental objective[,]" *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013) (citing *Bell*,

441 U.S. at 539), or that "it appears excessive in relation to the alternative purpose assigned[,]" *Bell*, 441 U.S. at 538 (citation omitted). "[R]estraints that 'are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting.' " *Peoples*, 422 F.3d at 1106 (quoting *Bell*, 441 U.S. at 540).

Although the Due Process Clause covers a pretrial detainee's constitutional claims concerning conditions of confinement, the Eighth Amendment standard provides the framework for the claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. at 535). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). "[D]eliberate indifference to serious medical needs of prisoners" also violates the Eighth Amendment's proscription of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although prison officials cannot absolutely guarantee the safety of their prisoners, they are responsible for taking reasonable measures to insure inmate safety. *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

"Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). A plaintiff satisfies the objective component of the test if the harm suffered was sufficiently serious. *Id.*

The subjective component requires a showing that the defendant acted with a culpable state of mind. *See Farmer*, 511 U.S. at 836. In *Farmer v. Brennan*, the Supreme Court observed that the required *mens rea* lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other...." 511 U.S. at 836. The Court then held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A defendant's knowledge of a substantial risk may be proven by circumstantial evidence, including evidence "that the risk was obvious." *Id.* at 842. Mere negligence is not enough to constitute deliberate indifference. *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).

**C.    The Evidence Does Not Show a Violation of Due Process Rights**

Here, the evidence shows that Plaintiff's segregation was for a legitimate nonpunitive purpose. Plaintiff was not medically fit to be housed in the general population. She required a wheelchair to ambulate, and was initially in severe pain from her injury. Plaintiff was placed in the medical observation cell in order to allow jail staff to observe her, assist her, and to protect her from victimization by other inmates. "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994)"]

Plaintiff cannot show that her assignment to medical segregation bears no reasonable relationship to any legitimate objective. Plaintiff's assignment was based on her own individual needs and circumstances. It was not arbitrary, discriminatory, or punitive.

Plaintiff was originally assigned to medical observation by medical staff who examined Plaintiff during booking. The evidence shows that the decision to house inmates in medical housing, including Plaintiff, was made by medical professional exercising their professional judgment. The evidence shows that Warden Morales was aware of the assignment, checked on Plaintiff personally, and did not believe Plaintiff was in distress.

Plaintiff cannot support her claims that Warden Morales acted with deliberate indifference.

Alleged or actual negligence or failure to follow standards is insufficient to establish deliberate indifference. Plaintiff has not shown an excessive risk to inmate health and safety, and cannot show that Warden Morales was aware of or that he disregarded any such risk.

## II.    COUNT II - VIOLATION OF FOURTEENTH AMENDMENT: INHUMANE CONDITIONS OF CONFINEMENT/ INADEQUATE MEDICAL CARE

Plaintiff has alleged that Warden Carlos Morales and Corrections Officer Steve Chavez violated her Fourteenth Amendment rights to due process by failing to provide humane conditions of confinement and adequate medical care as a when she was a detainee.

Plaintiff alleges that she was placed in a cell with an inoperable toilet, in solitary conditions, and in atypical confinement that violated contemporary standards of decency. (FAC ¶¶ 167-174.) She alleges that she disclosed she required medications for her bipolar disorder and PTSD. She alleges that she did not leave her cell or see natural light. She alleges that she was not provided with a restroom or shower, failed to receive help with hygiene needs, and was required to sit in her own menstrual blood.(FAC, ¶¶ 178-190.) She alleges that she was not treated for withdrawal. (FAC ¶¶ 191-200.)

Plaintiff alleges specific knowledge by Warden Morales and the medical provider Defendants about risks from placement in solitary confinement and about Plaintiff's "deterioration." (FAC ¶¶ 219-220.)

Plaintiff alleges as to Officer Chavez taunted her and 'discouraged and even prevented other guards from providing Crystal with humane conditions." (FAC ¶¶ 212-217.)

**A.    Legal Standard**

This claim has two components, first regarding the conditions of treatment, and second regarding the provision of medical treatment.

As to the conditions, the analysis is whether the conditions amount to punishment, as addressed above.

> In evaluating the constitutionality of conditions or restrictions of **pretrial** detention that implicate only the protection against deprivation of liberty **without due process** of law, we think that the proper inquiry is whether those conditions amount to punishment of the **detainee**. *Bell v. Wolfish*, 441 U.S. 520, 520, 99 S. Ct. 1861, 1864, 60 L. Ed. 2d 447 (1979)

Under the Fourteenth Amendment due process clause, "pretrial detainees are. . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates" under the Eighth Amendment. *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). A claim for inadequate medical attention will be successful if the plaintiff shows "deliberate indifference to serious medical needs." *Estate of Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The Supreme Court has cautioned that "an inadvertent failure to provide adequate medical care" does not rise to a constitutional violation. *Estelle*, 429 U.S. at 105-06.

The test for deliberate indifference is both objective and subjective. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component of the test is met if the ʻharm suffered rises to a level ʻsufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[I]n order for [Plaintiff] to avoid summary judgment on her Eighth Amendment claims, she was required to set forth facts demonstrating that her medical need was objectively sufficiently

serious, and that defendants' delay in meeting that need caused her substantial harm." *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

"To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (internal quotation marks omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference. The question is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Id.*

Negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020), citing *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

The factfinder may conclude that a prison official subjectively knew of the substantial risk of harm by circumstantial evidence or "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. However, the Supreme Court has cautioned that an obvious risk cannot conclusively establish an inference that the official subjectively knew of the substantial risk of harm, because "a prison official may show that the obvious escaped him." *Id.* at 843, n. 8.

Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were

therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at p. 844. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Id.* Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause. *Id.* at 845.

Section 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential. *See, e.g., Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation . . . must be established." (emphasis added) (citation omitted)).

Courts have given some guidance as to the magnitude of withdrawal symptoms which would meet the objective standard. The Court in *Quintana v. Santa Fe County Board of Commissioners,* 973 F. 3d 1022, 1029-1030 (10th Cir, Kan, 2022) noted "frequent vomiting alone does not present an obvious risk of severe and dangerous withdrawal," but that "*bloody* vomiting" would imply to a reasonable official that there was an actual internal injury.

Officials are entitled to rely on the professional judgment of trained medical personnel with regard to the need for medical care. *Miltier v. Beorn,* 896 F. 2d 848, 854-855.

1.    **Application – Medical Treatment**

The record does not show any culpable denial to provide medical care by any Defendant.

The record does not show any objective sufficiently serious medical need was known to Defendants, nor that any need was disregarded by any of them.

The record does not show that any Defendant refused or failed to provide treatment for withdrawal. The evidence shows that Plaintiff was treated for withdrawal once she exhibited signs of potential withdrawal. She was observed to be behaving strangely on December 29, 2019, and on December 30, 2019, she was taken to Lincoln County Medical Center where she was treated for withdrawal from alcohol and from benzodiazepines. (SOF ¶¶ 10, 11.) Plaintiff had been treated at Lincoln County Medical Center for her knee immediately before her detention on December 24, 2019, and shortly after on December 26, 2019. (SOF ¶¶ 1, 9.) Neither time did the treating doctors note that she was experiencing withdrawal or that she should be on a withdrawal protocol. (SOF ¶ 9.)

The record does not show that Plaintiff was subject to unnecessary pain or injury due to lack of medical treatment. Plaintiff testified that she missed her pain medication only once, on the day that video cameras were installed in her cell. (SOF ¶ 28.)

2.    **Application – Conditions of Detention**

The evidence in this case does not support the allegations regarding hygiene and toilet access. Plaintiff testified that she was provided with hygiene products. Plaintiff testified that the water to her toilet was turned off after her cellmate attempted to flush papers, and from that time onward the toilet was flushed from outside the cell. (SOF ¶ 21.) She testified that her toilet backed up one time when she first arrived at LCDC and was repaired quickly. (SOF ¶ 20.)

Plaintiff's testimony regarding access to the shower, if believed, still does not rise to the level of a Constitutional violation. She admitted in her amended complaint that she showered ten times. (FAC ¶ 156.) She testified that she was able to shower only three times during the 54 days she was placed in the medical observation cell. She required assistance to shower. She testified that she had asked to shower and was told nurses were unavailable to assist. She testified that one time she was offered a shower and refused. She further testified that she was later able to bear weight and did not require assistance during two instances when she was allowed to shower.

Plaintiff testified that issues she had with urinating on herself or having menstrual blood on herself were all during her first week of detention. (SOF ¶ 24.) She testified she fell trying to go to the toilet only one time. (SOF ¶ 25.) At most these are issues that Plaintiff experienced short-term during the first week of incarceration, not due to any failure by Defendants to provide her with assistance as needed.

Plaintiff testified she was aware that all windows were painted over at LCDC, not just those in the medical observation cell, as she knows from prior detention. (SOF ¶ 26.) The conditions as she describes are not atypical of other prisoners in the general population and do not represent discriminatory punishment to Plaintiff.

Evidence regarding acts by Officer Chavez at most cannot show a Constitutional violation. Plaintiff testified that she believed Officer Chavez was responsible for banging on the cell door and making sounds because she heard his voice laughing. (SOF ¶ 27.)

## III.    OBJECTIVE INJURY

The record does not show that Plaintiff suffered a serious harm.

Plaintiff testified that no doctor has ever told her that her knee got worse during incarceration. (SOF ¶ 29.)

Plaintiff has had little or no treatment for psychological conditions after her incarceration. She testified that she went one time to a psychiatrist and did not go back, learned to manage her panic attacks, which pre-existed her incarceration. She also completed a court-ordered 6 month program for substance abuse. She had no other treatment. (SOF ¶ 30.)

She testified she did not resume regular use of Xanax. (SOF ¶ 31.) She did violate her probation by using Xanax that she had left over. (SOF ¶ 31.)

She testified she no longer drinks. (SOF ¶ 32.) She testified she now uses medical cannabis 1-4 times a day. (SOF ¶ 33.)

## IV.  MORALES IS ENTITLED TO SUMMARY JUDGMENT ON ANY CLAIM BY PLAINTIFF THAT HE WAS DELIBERATELY INDIFFERENT TO MS. BUSTER'S MEDICAL NEEDS AT THE LCDC

As the Tenth Circuit has pointed out, it is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely "the symptoms presented at the time the prison employee has contact with the prisoner." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (2009) (citation omitted). In a similar case involving death from complications of intoxication, the Tenth Circuit held that the objective harm is that which the inmate ultimately suffers and not the intoxication with which the inmate presents. *See Id*. Accordingly, the question in this case focuses on the subjective component, whether Morales knew Ms. Buster faced a substantial risk of death at that time and whether he deliberately disregarded that risk.

Thus, plaintiff must prove that it was obvious to Morales that – despite the medical clearance – Ms. Buster had an objective risk of serious medical harm, based solely on the

information he actually had.  Plaintiff must show from the evidence that despite the medical clearance, Morales "drew the inference" that Ms. Buster was at risk a serious condition such as a heart attack or death.  *See Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Regardless, such symptoms are not evidence themselves of an impending "fatal medical condition," particularly, as in this case, where Ms. Buster arrived with a freshly written medical clearance from the hospital.  Plaintiff cannot overcome summary judgment, because she cannot show that Morales was subjectively aware of the specific harm claimed by the prisoner and not simply aware that harm, in a general sense, could occur. *Doty v. Broomfield*, 2015 U.S. Dist. LEXIS 144255 ¶ 16 (citing *Martinez*, 563 F.3d at 1089).  The clearly established law within this circuit holds that intoxication symptoms are not, as a matter of law, obvious signs of a risk of impending death. *Martinez v. Beggs*, 563 F.3d 1082, 1088-1890 (2009).

In *Martinez*, a detainee Kenneth Ginn, who had been held at a county detention center, died from a heart attack, precipitated in part by acute alcohol intoxication. Medical experts testified there that if the detention center had transported Ginn to the hospital instead of holding him in custody, he likely would have lived. The experts opined that,

> the medical facility would have measured Ginn's blood alcohol level, that level would have exceeded 300 mg/dl, "which is associated with coma and depressed vital signs"; Ginn would have been kept in the facility for observation; while under observation Ginn would have "experienced an acute coronary syndrome and ventricular arrhythmia"; Ginn's cardiac experiences would have been reversed with medical supervision and treatment . . ..

*Martinez*, 563 F.3d at 1087.

In affirming a summary judgment on the grounds of qualified immunity in favor of the custodial officers and the county, the Tenth Circuit panel, consisting of Judges Kelly, Brisco and

McConnell, held that defendants had to subjectively disregard the risk of detainee's claimed harm—death and heart attack—and not merely the risks of intoxication. The Court concluded that "[n]othing in the record indicates that Ginn exhibited symptoms that would predict his imminent heart attack or death." *Martinez*, 563 F.3d at 1091.

Significantly, the custodial officers in *Martinez* were aware of far more detailed facts than the limited information that Morales received here. The officers knew that Mr. Ginn had consumed an entire bottle of whiskey, could not walk without help, was too incoherent to be booked into jail, had not been medically screened, may have been unconscious for a short time and was talking as if he were hallucinating. A bystander to the arrest thought he needed medical care. None of the jail staff performed any regular checks on Ginn. *Martinez*, 563 F.3d at 1090.

The Tenth Circuit panel agreed with the District Court's determination that the officers subjectively knew that Ginn was intoxicated. However, the Tenth Circuit agreed that there was no evidence to show that anyone would have known that Ginn would face an imminent heart attack or death, much less that the individual county defendants subjectively knew that Ginn was at risk of heart attack or death. *Martinez*, 563 F.3d at 1090..

Other Tenth Circuit cases have reached similar results. *See e.g.*, *Cox v. Glantz*, 800 F.3d 1231, 1250-1252 (10th Cir. 2015) (plaintiff had to show actual knowledge by a prison official of an individual inmate's substantial risk of suicide). *Sealock v. Colorado*, 218 F.3d 1205 at 1208, 1211, 1212 n. 7 (10th Cir. 2000) the subjective component was not met where a prison nurse misdiagnosed an inmate's chest pains as the flu, and failed to recognize symptoms suggesting an impending heart attack." *Bruner-Mcmahon v. Jameson*, 566 Fed. Appx. 628, 634 (10th Cir. 2014) (unpublished) (it is not sufficient—for a constitutional claim—to show that defendants observed

that Mr. Bruner appeared to have the flu or was acting in a strange way that might have been related to a mental health condition; appellants were required to produce evidence showing that defendants appreciated that Mr. Bruner "had a risk of a fatal medical condition and chose to disregard" that risk).

In the present, case, it is undisputed that Morales was aware that Ms. Buster had arrived at the LCDC with a medical clearance for admission into that facility. There were no special instructions for care or monitoring conveyed to Morales. Indeed, plaintiff has not shown any evidence that Morales would even have been aware of the potential for a serious medical harm after clearance by the hospital. Thus, the evidence falls far short of suggesting that Ms. Buster was at obvious risk of serious harm when she arrived at the LCDC.

**V.     COUNT IV - VIOLATION OF FOURTEENTH AMENDMENT: CUSTOM AND POLICY OF VIOLATING CONSTITUTIONAL RIGHTS (DEFENDANT LINCOLN COUNTY AND DEFENDANT MORALES IN HIS OFFICIAL CAPACITY/ DEFENDANT LINCOLN COUNTY)**

Plaintiff has alleged a "custom and policy" of violation of her Constitutional rights by Warden Morales and by Lincoln County. For the reasons set forth in connection with the First and Second Causes of Action, the evidence fails to establish an individual violation by either Defendant, much less a custom and policy of doing so. The conditions at issue were not intended to be punitive, and did not violate procedural or substantive due process.

Plaintiff made the following allegations as to Warden Morales:

248. Defendant Morales personally allowed Crystal to be incarcerated in inhumane conditions of confinement.
249. Defendant Morales personally knew that Crystal was suffering in a solitary confinement cell without procedural due process.
250. Defendant Morales personally knew that Crystal's mental health deteriorated while in isolation at LCDC.

Plaintiff made the following allegations as to the County:

252. There is a causal connection between Defendants' policies and the violation of Plaintiff's constitutional rights, which amounts to deliberate indifference.
253. As a proximate and foreseeable result of Defendants' deliberate indifference to Crystal's serious, obvious medical condition, Crystal suffered serious injuries, including pain and suffering, emotional distress, post-traumatic stress disorder and exacerbation of her mental illness.

To prevail in a 42 U.S.C. § 1983 claim against a government entity based on conduct of a government official, a plaintiff must show more than just that the entity's agent violated the plaintiff's rights; the plaintiff must also demonstrate that the injury to the plaintiff resulted from the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Wood v. City of Alamogordo*, 2015-NMCA-059, ¶ 17, 350 P.3d 1185, 1190.

As addressed above, the assignment of Plaintiff to medical segregation and the conditions of her detention were not violations of her rights. Nor can any decision regarding Plaintiff's housing, care, or condition been shown to arise from policies and procedures of the County or the Warden in his official capacity.

**CONCLUSION**

Defendants Board of County Commissioners for Lincoln County, Correctional Solutions Group, LLC, Carlos Morales in his official capacity, and Steve Chavez have not violated Plaintiff's rights to Due Process or otherwise violated her Constitutional Rights under the Fourteenth or Eights Amendments. Defendants respectfully request that Summary Judgment be entered in their favor on Plaintiff's Count I, II, and IV.

Respectfully submitted this 20th day of February, 2024.

LORBER, GREENFIELD & POLITO, LLP

By:____/s/Louis W. Horowitz_____
       Louis W. Horowitz, F.B.N. 14-7
       Dominique Oliver, F.B.N. 19-267
       100 Sun Ave. NE, Suite 650
       Albuquerque, NM  87109
       Telephone: (800) 291-3062
       lhorowitz@lorberlaw.com
       doliver@lorberlaw.com
       *Counsel for Defendants Board of County*
       *Commissioners for Lincoln County,*
       *Correctional Solutions Group, LLC,*
       *Carlos Morales, in his official capacity, and*
       *Steve Chavez*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of February, 2024, I filed the foregoing using

CM/ECF which caused the following parties or counsel to be served by electronic means, as more

fully reflected on the Notice of Electronic Filing:

Matthew E. Coyte
COYTE LAW P.C.
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
mcoyte@me.com
*Counsel for Plaintiff*

Lisa Y. Schatz-Vance
Matthew Vance
LAW OFFICE OF MATTHEW VANCE, P.C.
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
lisa@mattvancelaw.com
mattvance@mattvancelaw.com
*Counsel for Plaintiff*

Spring V. Schofield
Mark A. Metzgar
DIXON SCHOLL CARRILLO P.A.
P.O. Box 94147
Albuquerque, NM 87199-4147
SSchofield@dsc-law.com
mmetzgar@dsc-law.com
*Counsel for Defendant Anita Hittle*
*and Carly Reynolds*

Steven L. Gonzales
HALL & EVANS, LLC
125 Lincoln Avenue, Suite 225
Santa Fe, NM 87501
gonzaless@hallevans.com
*Counsel for Defendant Carlos Morales*
*in his Individual Capacity*

  */s/Louis W. Horowitz*
Louis W. Horowitz