IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRYSTAL BUSTER,

    Plaintiff,

v.    No. 2:21-cv-01208-MLG-JHR

BOARD OF COUNTY COMMISSIONERS FOR
LINCOLN COUNTY, CORRECTIONAL
SOLUTIONS GROUP, LLC, CARLOS MORALES,
individually and in his official capacity, CARLY
REYNOLDS, individually, ANITA HITTLE,
individually, and STEVE CHAVEZ, individually,

    Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANT CARLOS MORALES'S JOINDER IN AND ADOPTION OF DEFENDANTS BOARD OF COUNTY COMMISSIONER FOR LINCOLN COUNTY, CORRECTIONAL SOLUTIONS GROUP, LLC, CARLOS MORALES IN HIS OFFICIAL CAPACITY, AND STEVE CHAVEZ'S MOTION FOR SUMMARY JUDGMENT REGARDING COUNT I, II, AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff, through undersigned counsel, and responds as follows to Defendant Carlos Morales's Joinder in and Adoption of Defendants Board of County Commissioner for Lincoln County, Correctional Solutions Group, LLC, Carlos Morales in his Official Capacity, and Steve Chavez's Motion for Summary Judgment Regarding Count I, II, and IV of Plaintiff's First Amended Complaint (Doc. 168), filed on February 20, 2024.

## I.    INTRODUCTION

Defendant Morales in his individual capacity seeks to join the County and CSG in their Motion for Summary Judgment. In doing so Defendant Morales (in his individual capacity) puts forward a new list of additional facts that are largely disputed. These additional facts attempt to

1

point the finger at the Medical Defendants as being the people with sole responsibility over the conditions of confinement Crystal was subjected to. Plaintiff objects to the joinder as it appears to be a new motion for summary judgment disguised as a joinder. Additionally, it presents new material facts that are obviously in dispute. Plaintiff will therefore respond to this joinder by pointing out the factual inconsistencies it contains.

## II. DEFENDANT'S MATERIAL FACTS IN DISPUTE

1. This is not a factual assertion. This is a summarization of a lengthy complaint which leaves out important factual allegations. For example, in the referenced paragraphs, Plaintiff also alleges Defendants were deliberately indifferent to Crystal's inhumane conditions of confinement. (Pl. Am. Compl., Doc. 16, ¶¶ 165-225.)

2. Plaintiff does not dispute Crystal's left knee was broken during her arrest.

3. Plaintiff does not dispute Crystal was taken to the hospital for evaluation of her left knee.

4. Plaintiff does not dispute the assertion that Crystal was evaluated at the Lincoln County Medical Center ("LCMC") the night of December 24, 2019, after suffering a broken knee during her arrest as set forth in Defendants' Statement No. 4. Plaintiff disputes the implication that anything other than Crystal's diagnosis of closed fracture of left tibial plateau was treated. (Defs.' Ex. B, Doc.167-2.)

5. Plaintiff disputes this assertion. Housing assignments to holding cells, including for medical observation purposes, require the warden and the health services administrator's involvement. (Pl. Ex. 7, Doc. 181-7, 197:10-24.) Keesha Chavez, a former detention officer, remembers Defendant Morales's involvement in the decision to place Crystal in medical observation, including the signing of classification documents, which have not

been provided to Plaintiff. *See Deposition of Keesha Chavez,* 21:7-22:9; 24:5-21, attached hereto as Exhibit A. When Crystal asked when she could return to general population, Ms. Chavez informed her that Defendants Morales and Reynolds decided she was to be housed in the booking cell. *Id.,* 168:11-170:4.

6. Plaintiff disputes. Viola Gomez, an LPN at LCDC, testified plans are created to move detainees housed in medical observation to general population. (Pl. Ex. 8, Doc. 181-8, 167:8-169:3.) (When asked who was responsible for that plan, Ms. Gomez said it would be developed by the health services administrator (Defendant Reynolds) and the warden at the time (Defendant Morales). *Id.* Additionally, housing assignments to holding cells for medical observation purposes require the warden and the health services administrator's involvement. (Doc. 181-7, 197:10-24.)

7. Plaintiff Disputes. Defense counsel misrepresents Carlos Morales's testimony. Carlos Morales was testifying in the context of December 30, 2019, when Crystal was diagnosed with benzodiazepine withdrawal and had already been booked at LCDC. *See Deposition of Carlos Morales Vol. II,* 20:6-25, attached hereto as Exhibit B. When asked about this event, Defendant Hittle testified that the health services administrator and the warden, Defendants Reynolds and Morales, had the option to not receive Crystal from LCMC. *See Deposition of Anita Hittle,* 174:13-175:10, attached hereto as Exhibit C; *see also* (Pl. Ex. 7, Doc. 183-7, 180:4-181:6.)

8. Plaintiff admits that medical personnel had the responsibility to monitor Crystal's medical condition and to call a doctor if necessary. Plaintiff disputes the assertion that Defendant Morales had no duty to ensure Crystal was receiving appropriate medical care in the

booking area. Defendant Morales testified that the medical observation cells were closed and used as storage space for the "medication lockup" and medical files. *See Deposition of Carlos Morales, Vol. I,* 56: 8-23, attached hereto as Exhibit D. He further testified that booking officer would be used to conduct observation. *Id*.

9. Disputed. The claim Crystal had stable vital signs is disputed by the testimony of Carly Reynolds who said her heart rate was elevated and she had a fever. *See Deposition of Carly Reynolds,* 151:12-152:3, attached hereto as Exhibit E.

10. Plaintiff does not dispute Defendant Hittle wrote a fractured tibial plateau and "mh history".

11. Plaintiff, disputes. Because it was Christmas day, Defendant Hittle remembered calling Morales about a serious condition. *See Exhibit C,* 103:2-7.

12. Plaintiff disputes. The placement of Crystal Buster was a collaborative decision between Defendants Morales (warden) and Reynolds (health services administrator). (Doc.181-7, 197:10-24.) Crystal's cell assignment had a security component since she had crutches at the time of her booking that required Defendant Morales's involvement since he was ultimately responsible for all security decisions as warden. *See Exhibit A,* 21:7-23:8.

13. Plaintiff disputes the implication that Defendant Morales had no responsibility for Crystal's conditions of confinement while housed in a holding cell for medical observation. CSG's own policy required Defendant Morales, as warden, to ensure that all detainees are provided housing that meets or exceeds the minimum standards described by the American Correctional Association through regular and effective monitoring. *See CSG Policy 14.1.4, Detainee Housing,* attached hereto as Exhibit F. These minimum standards require each

assigned housing unit to include a toilet above floor level available for use without staff assistance twenty-four (24) hours a day, a washbasin with hot and cold running water, and access to natural light. *Id.* Plaintiff has demonstrated through inmate testimony that Crystal's holding cell did not meet these minimum standards. (Pl. Ex. 4, Doc. 162-3, 10:8-14; 29:3-15); *see also* (Pl. Ex. 9, Doc. 162-8, 28:24-29:23; 32:16-33:12; 34:12-20.) Defendant Morales had the authority to move Crystal to another holding cell that met these standards. *See Exhibit A*, 175:20-176:6.

14. Plaintiff disputes this fact. The reason Plaintiff was housed in booking for so long is not clearly understood as the classification records have not been preserved. (Pl. Mot. Sanctions #2, Doc. 160.) The segregation logs indicate Crystal was classified as medical observation on January 20, 2020, and administrative segregation on January 27, 2020. (Pl. Ex. 6, Doc. 162-5.) On February 2, 2020, she was disciplined but no records associated with this event have been preserved. (Pl. Ex. 14, Doc. 181-14.) Fellow inmate Presli Stevenson was placed into Crystal's cell as punishment, demonstrating the punishing nature of the booking cell in question. (Pl. Mot. Partial Summ. J., Doc. 162, ¶ 36.)
15. Plaintiff does not dispute this factual allegation.
16. Plaintiff disputes the implication that Defendant Morales was not aware of Crystal's medical condition. He received an update from Defendant Hittle since Crystal was not an ordinary intake. *See Exhibit C,* 99:20-100:3. Defendant Reynolds contacted him each time Crystal needed to be sent out to the ER. (Def's. Ex. 5, Doc.168-5.) Defendant Morales further testified it was his responsibility to check on the health and safety of people in

isolation at least once a week, including Crystal. (Pl. Ex. 2, Doc. 162-2, 86:23-25; 88:17-89:3.)

17. Plaintiff does not dispute this factual allegation.

18. Plaintiff does not dispute this factual allegation.

19. Plaintiff does not dispute this factual allegation.

20. Plaintiff does not dispute this factual allegation. However, see *Plaintiff's Proffer of Material Facts,* at a.

21. Plaintiff does not dispute this factual allegation. However, see *Plaintiff's Proffer of Material Facts,* at c and e.

22. Plaintiff disputes. Defendant Morales was contacted on December 25, 2019 because Crystal's condition was serious. *See Exhibit C,* 103:2-7. Crystal was being booked into LCDC with medical paperwork from the ER, which flagged Crystal as a priority that required the warden and the medical staff to follow up and monitor her. *See Exhibit E*, 187:12-17.

23. Plaintiff disputes the implication that Defendant Hittle's testimony means there was no indication Crystal was going to withdraw from a benzodiazepine. Defendant Hittle agreed that an LCDC medical staff member should have followed up to confirm Crystal's Xanax prescription to make sure she did not detox unattended in the next twenty-four (24) to forty-eight (48) hours. *See Exhibit C,* 79:10-81:13. Further, when conducting Crystal's receiving/transfer screen, Crystal communicated to Defendant Hittle that she has mental health problems and needs her Xanax. *Id.,* 87:15-22.

24. Plaintiff does not dispute that Defendant Reynolds was the health services director of the LCDC during Ms. Buster's incarceration. Plaintiff disputes the implication that Reynolds could send inmates to hospital without the Warden's involvement. Defendant Reynolds testified she could not send a detainee outside the jail for medical care without the acceptance and approval of Defendant Morales. (Doc.168-5.)

25. Plaintiff disputes the fact. As warden, Defendant Morales was responsible for the hiring and direction of all staff employed at LCDC. *See CSG Policy 1.1.2 Warden,* attached hereto as Exhibit G.

26. Plaintiff does not dispute this factual allegation.

27. Plaintiff disputes the implication Defendant Morales had no means to improve the booking area shower. Defendant Morales was responsible for initiating the paperwork process to obtain final approval from the county to replace the shower. *See Exhibit D,* 158:15-159:20. Common sense also dictates that improvements to the cleanliness of a shower can be made for less than $1,000.

28. Plaintiff disputes. According to policy, Defendant Morales was responsible for the hiring and direction of all staff employed at LCDC and had the authority to seek and consider ideas of staff intended to improve the operation of the facility. *See Exhibit G*.

29. Plaintiff disputes the implication that Defendant Morales had no involvement in firing jail or security personnel since he was responsible for all staff and operations of LCDC. *Id.*

30. Plaintiff does not dispute this factual allegation.

## III. PLAINTIFF'S PROFFER OF MATERIAL FACTS

a. Warden Morales made no attempt to remove the paint from Crystal's window despite knowing "it was bad" for her. *See Exhibit D*, 123:15-125:23.

b. Warden Morales knew that policy required inmates to have access to recreational opportunities and natural light. *Id.,* 119:22-120:4.

c. Warden Morales knew that medical observation could not be properly undertaken by security staff and that moving the medical cells to the booking area came at the detriment of the inmates. *Id.,* 60:9-62:13.

d. Defendant Chavez admitted he did not have additional training to conduct medical observation. *See Deposition of Steve Chavez,* 23:21-24:8, attached hereto as Exhibit H.

e. Warden Morales knew that security staff should not be tasked with medical observation. *See Exhibit D,* 64:11-22.

f. Defendant Morales was contacted on December 25, 2019 because Crystal's condition was so serious. *See Exhibit C,* 103:2-7. Crystal was being booked into LCDC with medical paperwork from the ER, which flagged Crystal as a priority that required the warden and the medical staff to follow up and monitor her. *See Exhibit E*, 187:12-17.

g. Warden Morales knew of the likelihood that people would enter his facility with the potential of suffering from withdrawal and knew his medical department was not staffed sufficiently to handle this process. *See Exhibit B,* 15:1-17:12.

## IV. ARGUMENT

Defendant Morales's Joinder does more than simply join in support of an existing motion for summary judgment. It includes a new list of "Additional Undisputed Facts" that are clearly in

dispute. Although it does not mention the standards for summary judgment and contains no additional argument or legal analysis, it appears to alter the landscape of the original motion it seeks to join by pointing the finger of responsibility at the Medical Defendants who were not the subject of the original motion. This introduction of new material facts requires Plaintiff (and the Court) to guess at how they impact the original motion and also how they alter the landscape of the motion for summary judgment filed by the Medical Defendants. Adopting a Co-Defendant's arguments by joining onto that party's Motion is problematic when it requires a "court to sift through the briefing and record and imagine which arguments might apply to which Defendants." *United States v. Renteria*, 720 F.3d 1245, 1251 (10th Cir. 2013). Plaintiff therefore objects to this joinder as an inappropriate attempt at summary judgment. (If the court treats it as a separate motion for summary judgment, it should be denied based on the lack of standards, authorities, and legal argument.) If the Court should treat the list of newly asserted facts as additional support for the County and CSG's Motion for Summary Judgment, then it needs to consider how these facts are disputed or internally inconsistent.

Strikingly Defendant Morales's factual assertions have pointed the finger at the Medical Defendants by claiming he did not have the authority to assign or remove Crystal from medical observation. (Doc. 168, ¶¶ 5, 6, 8, 12, 21.) This assertion implies that despite the sewage problems in the cell, the lack of natural light, the complete deprivation of recreation and opportunities to leave the cell to exercise, along with all of the restrictions that came with living in a booking cell, the Warden was powerless to intervene! Not only is this disputed by the depositional testimony of other witnesses who claim it was a joint decision between Warden Morales and Defendant Reynolds, but it is also plainly ridiculous. It is self-evident that a warden has the authority over the

placement of inmates within an institution and the conditions they are subjected to. *See Taylor v. Riojas* 592 U.S. 7, 8 (2020) (finding no reasonable correctional officer could have concluded it constitutionally permissible to house an inmate in deplorable conditions even for a short period of time (6 days)). This point is conceded in Defendant Morales's additional factual assertion #12, which states Warden Morales "approved the assignment of Crystal Buster to a medical cell". In other words, the list of "Additional Disputed Facts" is self-contradictory in this respect.

Defendant Morales in the present joinder, also disclaims responsibility over the decision to close down the medical observation cells, located in the medical department, and move them to the booking area of the jail. (Doc. 168, ¶ 21.) Although Plaintiff admits that the Health Services Administrator (Defendant Reynolds) made this decision, the Warden was aware that his security staff were not qualified to conduct medical observation. *See Plaintiff's Proffer of Material Facts,* at c, d, and e. In other words, the Warden allowed the nursing staff to shift the responsibility of medical observation onto the security staff who were not trained in such a responsibility. *Id*.

It is also of note that Warden Morales admitted he did not create policies for the observation or treatment of alcohol or drug withdrawal in the jail when Crystal was there. (Doc. 168, ¶ 18.) This concession places the County in rather a difficult position as everyone who runs a jail knows of the likelihood that people will enter life threatening withdrawal in their facilities. *See Plaintiff's Proffer of Material Facts,* at g; *see also* (Defs'. Ex. D, Doc. 165-4, 52:3-53:10). With this factual assertion the Court can conclude Warden Morales was deliberately indifferent in allowing intoxicated people (or people who take prescription Xanax) to be booked into a facility that had no policy in place to deal with their inevitable withdrawal. Crystal was just one of the victims of this decision.

Many of the remaining Additional Undisputed Facts are disputed, but their materiality to the Motion for Summary Judgment is unclear. Defendant Morales in his individual capacity chose not to explain the significance of the new facts or how they interact with the original motion. Plaintiff is therefore ill equipped to respond to them.

## V.　CONCLUSION

The Joinder request attempts to bootstrap additional facts into the summary judgment briefing without the support of any legal or factual analysis. Accordingly, Plaintiff objects to the Joinder.

Respectfully submitted,

COYTE LAW, P.C.

*/s/ Matthew E. Coyte*
Matthew E. Coyte
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
(505) 244-3030
mcoyte@me.com

-and-

LAW OFFICE OF MATTHEW VANCE, P.C.

*/s/ Matthew Vance*
Matthew Vance
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
(505) 242-6267
mattvance@mattvancelaw.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March 2024, I filed the foregoing electronically through CM/ECF, which caused Counsel of Record to be served by electronic means.

*/s/ Matthew E. Coyte*
Matthew E. Coyte