IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CRYSTAL BUSTER,

    Plaintiff,

v.                                                                             Case No. 2:21-cv-01208-MLG-JHR

BOARD OF COUNTY COMMISSIONERS FOR
LINCOLN COUNTY, CORRECTIONAL
SOLUTIONS GROUP, LLC, CARLOS MORALES,
Individually and in his official capacity, CARLY
REYNOLDS, individually, ANITA HITTLE,
individually, and STEVE CHAVEZ, individually,

    Defendants.

**DEFENDANTS BOARD OF COUNTY COMMISSIONERS FOR LINCOLN COUNTY, CORRECTIONAL SOLUTIONS GROUP, LLC, CARLOS MORALES IN HIS OFFICIAL CAPACITY, AND STEVE CHAVEZ'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT REGARDING COUNTS I, II, AND IV OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

        COME NOW Defendants the Board of County Commissioners for Lincoln County, Correctional Solutions Group, LLC, Carlos Morales in his official capacity, and Steve Chavez, and hereby, pursuant to Fed.R.Civ.P. 56, submit their Reply in Support of their Motion for Summary Judgment in their favor and against Plaintiff Crystal Buster on Counts I, II, and IV of Plaintiff's First Amended Complaint. (See Motion, Document 167, and Plaintiff's Response, Document 181). Plaintiff has not raised a material question of fact as to the allegations of violations of her Constitutional rights, and Defendants are entitled to Judgment on the rights claims as a matter of law and uncontested fact, for reasons set forth in the Motion and in the following Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants have set forth facts and law to support their position that Plaintiff's claims, in light of the uncontested evidence, cannot establish violations of her Fourteenth Amendment right to Due Process or otherwise establish Constitutional violations.

Plaintiff has made claimed that the conditions of her detention at the Lincoln County Detention Center ("LCDC") amount to punishment. The applicable law and standards cannot support a finding that Plaintiff's rights were violated because the conditions of her detention were based on legitimate purposes for the operation of the detention center. Plaintiff has argued that the facts cited by Defendant are in question and accused Defendants of misrepresenting the evidence, but Plaintiff's position rests in large part on misstatements of the evidence and testimony. There is no support for the findings of objective and subjective unreasonableness required to establish liability on these claims.

Plaintiff falsely states that the warden testified that Plaintiff's conditions of confinement were "untypical." Plaintiff ignores the evidence and argues that the terms of her medical segregation had "no penalogical purpose." Plaintiff disregards her own sworn testimony as to the details of her own claims and complaint. And Plaintiff misunderstands the applicable standards of law and proof.

Plaintiff argues the central issue is "whether a valid reason exists to justify the conditions in which Plaintiff was housed." (Document 181, p. 3.) Governing authorities recommend deference to the judgment of administrators on issues of proper governance of jails and prisons.

**I.     REPLY TO COMMENTS IN PLAINTIFF'S SECTION III "MATERIAL FACTS IN DISPUTE"**

Defendants note that certain of Plaintiff's responses are unsupported or misstate the evidence.

<u>Paragraph 1</u>:  It is unclear what implication Plaintiff is disputing. Plaintiff was certainly cleared for incarceration, as noted in the record. ("The patient is medically stable to go with the police officer for incarceration," Document 167-2, Exhibit B to Motion.)

<u>Paragraph 3</u>:  Plaintiff disputes the placement in "medical segregation" but has not cited evidence that raises any question of material fact.

The cited logs (Document 181-1, Plaintiff's Exhibit 1) indicate that Plaintiff was housed in ISO #1. Spaces for "Medical #114 and Medical #117" were not used. (As noted, cells in the medical area were no longer used and the booking area cells were used for medical segregation. See Motion, Document 167, p. 3, Statement of Facts ¶ 4.)

The records cited by Plaintiff contain references to medical segregation but do not indicate that her medical segregation started on January 17, 2020, or that the reason for her segregation changed on that date as Plaintiff suggests without support. Daily logs from prior dates indicated that Plaintiff was placed in ISO #1 and do not contain a specific notation regarding the reason. (See examples, **Exhibit N** hereto, CSG 1357, 1358, 1364).

<u>Paragraph 5</u>:  Plaintiff was in medical segregation and not "administrative segregation."

The text of the ACA standard cited by Plaintiff does not say that segregation for health reasons is prohibited. It states, "4-ALDF-2A-44 The facility administrator or designee can order immediate segregation when it is necessary to protect the inmate or others. The action is reviewed within 72 hours by the appropriate authority."

3

Paragraph 7: Plaintiff cites to her testimony that other detainees used wheelchairs but the testimony notes that she never saw a person in a wheelchair in general population. She claims she was told there were two others using wheelchairs. (Defendants' Exhibit F, Document 167-6, pp. 248:15-249:12.) She did not state there was "no physical difference between her and the other two detainees housed in general population who were in wheelchairs" as asserted by Plaintiff in her Response to Paragraph 7.

Paragraph 8: The witnesses cited by Plaintiff testified the decision would be between the HSA, officers/administration, and warden.

Nurse Viola Gomez testified she was sure there was a plan to move Plaintiff out of medical observation, but it did not look like it was written down. (Plaintiff's Exhibit 8, Document 181-8, p. 167:17-22.)

Paragraph 13: It is unclear what "allegations" Plaintiff references. The statements in Paragraph 13 are Plaintiff's own sworn testimony.

Paragraph 14: Plaintiff tries to make some distinction in her response to Paragraph 14, but she does not dispute and cannot dispute that Warden Morales did not have a policy of restricting access. Plaintiff has made official policies to deny access a part of her claims and argument.

Paragraph 15: Officer Chavez was asked and agreed that there was no record that Plaintiff received recreation. However the record is clear that it was offered including both testimony from Officer Chavez and the written logs.

> Q. You also note here that you -- that she refused a shower --
> A. Yes.
> Q. -- that you offered her.
> And that she refused recreation. Is that right?
> A. Yes.

(Deposition of S. Chavez, Document 184-1, p. 130:15-21, Exhibit A to Defendants' Response to Plaintiff's Motion for Summary Judgment Regarding Morales, Document 184.)

Officer Chavez testified that whenever he was not able to offer recreation, Warden Morales would ask other officers to do so, that he recalled Ms. McAllister and officer Keesha Chavez trying to get Plaintiff out for recreation, showers, and the library. (Exhibit A to Response to Plaintiff's Motion regarding Morales, Deposition of S. Chavez, Document 184-1, pp. 174:9-176:1. Also see Document 184, Response to Plaintiff's Motion for Partial Summary Judgment, pp. 3-4, Response to Plaintiff's Statement of "Undisputed Material Facts" at ¶ 5.)

Paragraph 17: See response by Defendants Hittle and Reynolds to similar claims. (Document 197, p. 10, response to Proffered Fact HHH.)

Paragraph 18: See response regarding Paragraph 15 above. (Also see Document 184, Response to Plaintiff's Motion for Partial Summary Judgment, pp. 3-4, Response to Plaintiff's Statement of "Undisputed Material Facts" at ¶ 5.)

Paragraph 20: The Statement at Document 158-3 cited by Plaintiff does not support the argument. The witness stated, "No, her toilet and sink worked, LCDC staff was unclogging her toilet at least 2 times a week due to her stuffing trash, excessive amounts of toilet paper, and her linen into the toilet." (Also see Document 197, p. 10, response to Proffered Fact GGG, and pp. 28-29.)

Paragraph 21: Plaintiff again refers to statements as "allegations." She appears to agree that she gave the sworn testimony cited in Paragraph 21 of Defendants' statement of facts.

Paragraph 22: See responses regarding Paragraphs 15 and 18 above. (And see Document 184, Response to Plaintiff's Motion for Partial Summary Judgment, pp. 3-4, Response to Plaintiff's Statement of "Undisputed Material Facts" at ¶ 5.)

Paragraph 25: Despite the qualifications Plaintiff seeks to make, her testimony is that she fell one time only.

Paragraph 28: Plaintiff does not dispute that she testified that she missed her pain medication one time only.

Plaintiff cites to delays in starting certain prescribed medication and regarding discontinuance of her hydrocodone for misuse. The evidence as discussed in detail by Defendants Anita Hittle and Carly Reynolds shows that Plaintiff was provided with medication for pain including access to prescriptions for certain narcotic pain medications prescribed for use "as needed."

Plaintiff suggests that she was not provided with pain medication promptly when she entered the LCDC. As set forth in the Undisputed Material Facts in Defendants Anita Hittle and Carly Reynolds' Motion for Partial Summary Judgment on Count II of Plaintiff's First Amended Complaint, Document 165, Plaintiff was sent to the jail from Lincoln County Medical Center on December 24, 2020, without any pain medication prescription, and was provided with Extra Strength Tylenol by RN Hittle. (Document 165, pp. 3-4, Undisputed Material Facts at ¶¶ 3, 5.) On December 26, 2020, She was prescribed "Tramadol only as needed. (*Id.*, ¶ 6.) Tramadol was requested from Walgreens pharmacy on the evening of December 26, 2020, obtained and first administered in evening of December 27, 2020, and the last dose was administered December 31, 2020. (*Id.*, ¶¶ 9, 10.) Although it is accurate that Tramadol was not provided until 24 hours after it

was first prescribed, the facts do not support a finding that medication was withheld or skipped. Records also confirm that Plaintiff was given a prescription for hydrocodone by Dr. Vu on January 8, 2020, at which time she was noted not to be in acute distress, and that the hydrocodone was first administered on January 17, 2020. She was given Extra Strength Tylenol between January 8 and January 17, 2020. (*Id.,* p. 6, ¶¶ 26, 28.)

The medication was discontinued after she was caught sharing medication on February 2, 2020. (Plaintiff's Exhibit 7, Document 181-14.)

Paragraph 29: Again, Plaintiff agreed that no doctor ever told her that her knee got worse during incarceration.

The record cited by Plaintiff (her Exhibit 15) makes reference to "concern" over long-term use of a knee immobilizer but does not include findings that any adverse condition or injury resulted.

## II. RESPONSE TO PLAINTIFF'S SECTION –IV PLAINTIFF'S PROFFER OF MATERIAL FACTS NOT ALREADY ASSERTED

Plaintiff's "proffered facts" do not raise material questions regarding the Motion.

Paragraph h and i: Defendant Officer Steve Chavez did not make the statement claimed by Plaintiff. He testified "if you were short-staffed sometimes you wouldn't be able to offer it" and then agreed when asked "And if you're short-staffed you wouldn't be able to offer some people showers." (Plaintiff's Exhibit 18, Document 181-18, pp. 53:24-54:9.) Also, as noted in the discussion of Plaintiff's Response to Defendants' Statement of Fact 15 above, Officer Chavez testified that if he was unable to offer recreation due to working on transport or other duties that he would ask other officers to do so. (Exhibit A to Response to Plaintiff's Motion regarding Morales, Deposition of S. Chavez, Document 184-1, at pp. 174:9-176:1.)

### III.     ARGUMENT

#### A.     Recreation

Plaintiff has argued that the evidence is contested as to whether she received recreation and as to the frequency of her showers. However the material issues are that there was no <u>policy to deny these</u> and that she was in fact <u>offered showers and recreation</u>.

There is no question they were offered, and no question they were refused on occasions. This is addressed in the testimony as well as the written records.

Plaintiff's own comments and allegations regarding her access and use of showers are inconsistent. However the records, which are admittedly incomplete, show showers on six occasions during the time Plaintiff was in medical segregation.

#### B.     Sewage Backups and Toilet

Evidence including Plaintiff's own testimony shows one toilet backup occurred which was quickly corrected.

Plaintiff's suggestion that there were frequent failures is unsupported. (Defendants' Motion for Summary Judgment, Document 167, Statement of Facts ¶¶ 20, 21, Response to Plaintiff's Motion for Summary Judgment, Document 184, Response to Statement of Facts ¶ 22.)

It is not contested that the water to the toilet was shut off at times due to detainee misuse and flushed from the outside. (Document 197, p. 10, response to Proffered Fact GGG, and pp. 28-29,)

Plaintiff argues that the motion "pretends the time Crystal spent in the booking area was for her own good." (Reply, Document 181, p. 14.) However there is no question that there was a purpose to Plaintiff's medical segregation.

Plaintiff's placement in medical segregation was necessary due to her injury, because an inmate with that injury needed to be separated from other inmates who may take advantage of them, and to avoid risk of injury to others by inmates disassembling the wheelchair to make a weapon. (Motion, Document 167, p. 3, Statement of Facts ¶¶ 5, 6.) Plaintiff agreed she was not physically fit to go into the general population when she was first incarcerated. (*Id.*, p. 4, ¶ 7.)

Plaintiff argues that the "conditions of confinement" collectively rise to the level of a constitutional violation. Plaintiff has argued that the conditions were a 'cumulative' punishment and that it was not correctly documented rather than showing and has denied that there was a legitimate purpose interest in the medical segregation of Plaintiff.

However the various conditions of Plaintiff's medical segregation which are the subject of the Response had legitimate purposes for the operation of the detention center.

Plaintiff suggests there is a violations due to lack of written records regarding the procedure for placing her in medical segregation and ongoing review. However the evidence shows that she was placed in medical segregation for valid reasons and reintroduced into the general population after she was sufficiently healed.

> "No process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons." *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citations omitted), opinion vacated in part on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006).

> "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to

Plaintiff's placement in medical segregation was necessary due to her injury, because an inmate with that injury needed to be separated from other inmates who may take advantage of them, and to avoid risk of injury to others by inmates disassembling the wheelchair to make a weapon. (Motion, Document 167, p. 3, Statement of Facts ¶¶ 5, 6.) Plaintiff agreed she was not physically fit to go into the general population when she was first incarcerated. (*Id.*, p. 4, ¶ 7.)

Plaintiff argues that the "conditions of confinement" collectively rise to the level of a constitutional violation. Plaintiff has argued that the conditions were a 'cumulative' punishment and that it was not correctly documented rather than showing and has denied that there was a legitimate purpose interest in the medical segregation of Plaintiff.

However the various conditions of Plaintiff's medical segregation which are the subject of the Response had legitimate purposes for the operation of the detention center.

Plaintiff suggests there is a violations due to lack of written records regarding the procedure for placing her in medical segregation and ongoing review. However the evidence shows that she was placed in medical segregation for valid reasons and reintroduced into the general population after she was sufficiently healed.

> "No process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons." *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citations omitted), opinion vacated in part on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006).

> "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to

Plaintiff's placement in medical segregation was necessary due to her injury, because an inmate with that injury needed to be separated from other inmates who may take advantage of them, and to avoid risk of injury to others by inmates disassembling the wheelchair to make a weapon. (Motion, Document 167, p. 3, Statement of Facts ¶¶ 5, 6.) Plaintiff agreed she was not physically fit to go into the general population when she was first incarcerated. (*Id.*, p. 4, ¶ 7.)

Plaintiff argues that the "conditions of confinement" collectively rise to the level of a constitutional violation. Plaintiff has argued that the conditions were a 'cumulative' punishment and that it was not correctly documented rather than showing and has denied that there was a legitimate purpose interest in the medical segregation of Plaintiff.

However the various conditions of Plaintiff's medical segregation which are the subject of the Response had legitimate purposes for the operation of the detention center.

Plaintiff suggests there is a violations due to lack of written records regarding the procedure for placing her in medical segregation and ongoing review. However the evidence shows that she was placed in medical segregation for valid reasons and reintroduced into the general population after she was sufficiently healed.

> "No process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons." *Peoples v. CCA Det. Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citations omitted), opinion vacated in part on reh'g en banc, 449 F.3d 1097 (10th Cir. 2006).

> "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to

operate a detention facility. (citation omitted)." *Bell v. Wolfish*, 441 U.S. 520, 535–40, 99 S. Ct. 1861, 1874, 60 L. Ed. 2d 447, 539 (1979).

"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S. Ct. 1861, 1878, 60 L. Ed. 2d 447 (1979).

"We think that the District Court and the Court of Appeals have trenched too cavalierly into areas that are properly the concern of MCC officials. It is plain from their opinions that the lower courts simply disagreed with the judgment of MCC officials about the extent of the security interests affected and the means required to further those interests. But our decisions have time and again emphasized that this sort of unguided substitution of judicial judgment for that of the expert prison administrators on matters such as this is inappropriate. See *Jones v. North Carolina Prisoners' Labor Union; Pell v. Procunier; Procunier v. Martinez*." *Bell v. Wolfish*, 441 U.S. 520, 554, 99 S. Ct. 1861, 1882, 60 L. Ed. 2d 447 (1979).

## IV. SUBJECTIVE AND OBJECTIVE STANDARD

Plaintiff has cited to and discussed *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Plaintiff states "Defendants' Motion makes no mention of *Kingsley* and instead relies on a subjective version of proving deliberate indifference. (Response, Document 181, p. 14.)

The standard discussed in *Kingsley* was specifically related to <u>use of excessive force</u> and when it could be a violation of Fourteenth Amendment Due Process rights.

"The question before us is whether, <u>to prove an excessive force claim</u>, a pretrial detainee must show that the officers were *subjectively* aware that their use of force was unreasonable, or only that the officers' use of that force was *objectively* unreasonable. We conclude that the latter standard is the correct one." *Kingsley v. Hendrickson*, 576 U.S. 389, 391–92, 135 S. Ct. 2466, 2470, 192 L. Ed. 2d 416 (2015).

The case does include a citation to *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861 (1979) which addresses broader Fourteenth Amendment issues. However, the *Kingsley* decision only concerns excessive force claims.

10

Officers involved in excessive use of force differ from other mistreatment claims because the <u>intent to use physical force</u> is not in question. The Court in *Kingsley* chose not to decide whether the same standard would apply to a allegations of detainee mistreatment that did not involve excessive use of force:

> "<u>Whether that standard might suffice for liability in the case of an alleged mistreatment of a pretrial detainee need not be decided here</u>; for the officers do not dispute that they acted purposefully or knowingly with respect to the force they used against Kingsley. *Kingsley v. Hendrickson*, 576 U.S. 389, 396, 135 S. Ct. 2466, 2472, 192 L. Ed. 2d 416 (2015)."…[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable. *Id.*, 576 U.S. 389, 396–97, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015).

Although some circuits have considered applying the objective standard from *Kingsley* to detainee mistreatment claims that do not involve use of excessive force, the plain text of *Kingsley* says the issue was not decided. And the 10th Circuit has not eliminated the requirement for a subjective standard to establish deliberate indifference. The 10th Circuit ruled on this issue recently in *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022 (10th Cir. 2020). In that matter, the Court evaluated claims of deliberate indifference to medical needs and found that, "<u>This exercise requires both an objective and a subjective inquiry</u>." *Id.*, 973 F.3d at 1028.

### A. Medical Care

The standard for a Fourteenth Amendment violation arising from deliberate indifference to a detainee's medical needs <u>expressly requires evidence of subjective intent</u>. (In assessing the plaintiff's contention that the individual defendants violated Ortiz's Fourteenth Amendment rights, we apply the two-part Eighth Amendment inquiry when a pretrial detainee alleges deliberate indifference to serious medical needs." *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1028 (10th Cir. 2020).

## V. PROCEDURAL DUE PROCESS

Plaintiff has argued that Warden Morales made statements regarding the conditions being "untypical," but Plaintiff's statement does not accurately cite the warden's testimony. He was asked if it would be typical to be denied recreation, showers, cleaning supplies, access to telephone, laundry access, hygiene, mail, commissary, and law library. He did not agree with counsel's assertion they were not provided. (Response to Plaintiff's Motion for Partial Summary Judgment Document 185, at p. 5, Response to Plaintiff's Statement of Undisputed Facts ¶ 35, And see Plaintiff's' Exhibit 5, Deposition of C. Morales, Document 162-4, p. 127:1-10.)

Plaintiff argues that she failed to receive a review of conditions for her medical segregation. Although there are no formal records of a review, the record shows that the witnesses believed a plan existed. (See reply to Plaintiff's Response to ¶ 8 of Defendants' Statement of Facts.) Nurse Gomez testified she was sure there was a plan, just that it did not look like it was written down. (Plaintiff's Exhibit 8, Document 181-8, pp. 167:17-22.)

## VI. GOVERNMENTAL LIABILITY

Plaintiff argues that the basis for suing the warden in his official capacity is based on his role as a policy maker. However, the arguments raised against Defendants' Motion ignore his actual testimony on policies. Warden Morales did not testify that Plaintiff or others in medical segregation should be denied access to recreation, showers, or other services.

## VII. DAMAGES AND SERIOUS HARM ARE NOT SHOWN BY THIS RECORD

Arguments regarding pain and suffering while incarcerated lack support and fail to rise to the level of serious harm as addressed in the Motion. Defendants further incorporate by reference the discussion in Defendants Hittle and Reynolds' Motion for Summary Judgment. (Document

165 at p. 7, UMF 33, 34, and p. 15, and Reply, Document 197, at pp. 3-4, discussion of Plaintiff's responses to UMF 33 and 34.)

**CONCLUSION**

Plaintiff has criticized the conditions of her detention but has not identified conditions which constitute punishment or otherwise violate her Fourth Amendment Due Process rights or other Constitutional rights. Plaintiff has not shown official policies that constitute punishment. Plaintiff has not shown deliberate indifference. Statements made by Plaintiff regarding admissions are misrepresented. Meanwhile Plaintiff ignores her own admissions that the conditions she argues about do not exist or are not extreme enough to reach the level of a violation. Defendants respectfully request that Summary Judgment be entered in their favor on Counts I, II, and IV of Plaintiff's First Amended Complaint.

Respectfully submitted this 17th day of April, 2024.

                                        LORBER, GREENFIELD & OLSEN, LLP

                                        By:   */s/Louis W. Horowitz*
                                               Louis W. Horowitz, F.B.N. 14-7
                                               Dominique Oliver, F.B.N. 19-267
                                               1700 Louisiana Blvd. NE, Suite 340
                                               Albuquerque, NM 87110
                                               Telephone: (800) 291-3062
                                               lhorowitz@lorberlaw.com
                                               doliver@lorberlaw.com
                                               *Counsel for Defendants Board of County Commissioners for Lincoln County, Correctional Solutions Group, LLC, Carlos Morales, and Steve Chavez*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of April, 2024, I filed the foregoing using CM/ECF which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew E. Coyte
COYTE LAW P.C.
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
mcoyte@me.com
*Counsel for Plaintiff*

Lisa Y. Schatz-Vance
Matthew Vance
LAW OFFICE OF MATTHEW VANCE, P.C.
3800 Osuna Road NE, Suite 2
Albuquerque, NM 87109
lisa@mattvancelaw.com
mattvance@mattvancelaw.com
*Counsel for Plaintiff*

Spring V. Schofield
Mark A. Metzgar
DIXON SCHOLL CARRILLO P.A.
P.O. Box 94147
Albuquerque, NM 87199-4147
SSchofield@dsc-law.com
mmetzgar@dsc-law.com
*Counsel for Defendant Anita Hittle*
*and Carly Reynolds*

Steven L. Gonzales
HALL & EVANS, LLC
125 Lincoln Avenue, Suite 225
Santa Fe, NM 87501
gonzaless@hallevans.com
*Counsel for Defendant Carlos Morales*
*in his Individual Capacity*

                                           /s/Louis W. Horowitz
                                           Louis W. Horowitz