**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CRYSTAL BUSTER,

          Plaintiff,

v.                                   Case No. 2:21-cv-01208-MLG-JHR

BOARD OF COUNTY COMMISSIONERS FOR
LINCOLN COUNTY, CORRECTIONAL
SOLUTIONS GROUP, LLC, CARLOS MORALES,
Individually and in his official capacity, CARLY
REYNOLDS, individually, ANITA HITTLE,
individually, and STEVE CHAVEZ, individually,

          Defendants.

**<u>DEFENDANT CARLOS MORALES' RESPONSE IN HIS INDIVIDUAL
CAPACITY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO COUNTS I, II, AND IV</u>**

Defendant Carlos Morales in his individual capacity ("Morales") hereby responds to

*Plaintiff's Motion and Memorandum in Support of Partial Summary Judgment Against*

*Defendant Morales in Both His Official and Individual Capacities on Counts I, II, and IV*

(Doc. 162) (the Motion").

    **Introduction**

Plaintiff's Motion fails against Morales in his individual capacity because she fails to

establish that Morales knew about conditions sufficient to establish a constitutional violation,

and then acted with deliberate indifference to them. She cannot prove these things because they

simply did not happen. It is Plaintiff's lack of evidence that no doubt resulted in the vagaries of

her contentions. Her motion speaks of one day here when she claims not to have been offered a

shower, or three days there her night light failed. Most significantly, she fails to show that

Morales knew of the conditions about which she complains. Simply put, she fails to establish a

prima facie case for summary judgment against Morales in his individual capacity.

All the while, Plaintiff conspicuously omits from her Motion the volumes of evidence that establish genuine issues of fact that preclude summary judgment. She omits that jail personnel actively worked to address the issues of which she complained. They called plumbers. They worked on the night lights. They turned on the water when asked. She omits the evidence that Morales was hamstrung in the position, with a title but little to no authority to do anything about the issues she raises. In his individual capacity, he is not the insurer or guarantor of all things that happen in a jail. Plaintiff must prove that he personally acted with deliberate indifference, and she fails to do so. Since Plaintiff cannot establish the absence of a genuine issue, he Motion must fail.

## I.    Response to Plaintiff's Claimed Undisputed Material Facts

1.    Not disputed.

2.    Disputed in part. The deposition testimony cited states the number of days Plaintiff was in *medical observation*. Morales was not the person who decided to move the medical observation cells to the booking area. See Doc 168-4, Declaration of Carlos Morales, ¶ 14. Thus, Plaintiff was housed for 51 days in a medical cell, not in administrative segregation.

3.    Not material to any claim against Morales in his individual capacity. He did not construct the cell. He became warden the month prior to the beginning of Plaintiff's incarceration. Id., ¶ 2; see also Plaintiff's UMF no. 1. Plaintiff does not cite to evidence that Morales in his individual capacity had the authority or ability to change the size of the cell. Plaintiff does not allege a claim against Morales in his individual capacity that the size of the cell is unconstitutionally small.

4.    Not disputed, but not material. Plaintiff's UMF 4 fails to state the days when Ms. Parraz was in the cell with Plaintiff, and makes no factual representation regarding Defendant

Morales in his individual capacity. Since Parraz does not testify that Morales saw any condition complained of in the Motion, the UMF does not establish or help to establish a constitutional violation allegedly committed by Defendant Morales in his individual capacity.

5. Disputed. Morales adopts and incorporates the response to this alleged fact set forth in *Response of Defendant Carlos Morales in His Official Capacity to Plaintiff's Motion for Partial Summary Judgment Against Defendant Morales in Both His Official and Individual Capacities on Counts I, II, and IV* (Doc. 184) (the "OC Response"), pp. 3-4.

6. Not disputed.

7. Disputed. Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 4, but notes that there appears to be a typographical error: Plaintiff refused recreation on December 26, 2019. Defendant further notes that he is not the custodian of the jail records, and is not the target of Plaintiff's Motion for Sanctions (Doc. 160) in which Plaintiff contends generally that the records that would show if Plaintiff had been offered recreation and showers were spoliated by other party Defendants. The unavailability of such logs is similarly prejudicial to Defendant Morales in his individual capacity. While he does not seek sanctions as Plaintiff does, Plaintiff's motion for sanctions establishes at length (perhaps not intentionally) that much relevant evidence is not available, and the Court should deny the Motion against Morales in his individual capacity pursuant to Fed. R. Civ. P. 56(d)(1) (permitting the Court to deny the Motion where facts are unavailable). Morales should not suffer summary judgment as a result of another party's failure to preserve documents that are likely to contain information tending to disprove this UMF 7.

Finally, Defendant disputes that Plaintiff's UMF 7 is material. Even if true, the fact does not purport to show any conduct of Morales in his individual capacity.

8.      Defendant does not dispute that he signed the log for Monday, January 13, 2020, at 0415 AM on Tuesday, January 14, 2020.  The document provides a space for a supervisor to sign, and Defendant was acting as a supervisor on the day, and therefore signed it.  The form Morales signed would not have shown any information for period prior to January 13, 2020 (because the form does not cover that time period), and would have been blank for all periods after 0415 AM on January 14, 2020 (i.e., events that had not yet occurred.  However, by using the phrase "signed off on the segregation log," Plaintiff appears to hope the Court will be misled by the phrase and interpret it to mean that Defendant Morales' signature either (1) ratified the sufficiency or propriety of the events the form was intended to document, (2) verified the accuracy of the information on the form, or perhaps (3) made some representation about a time period other than January 13, 2020 through 0415 AM January 14, 2020.

Defendant disputes all of those averments if made, and they are unsupported by the evidence to which Plaintiff cites for this UMF.  Nor does it make any sense that a supervisor's signature could intend to confirm every activity of corrections officers through the day; a supervisor would not be present for an entire 24-hour shift, and thus could not verify the actions of other officers when the supervisor is not on duty or for which he was not immediately present.  The only possible meaning of a supervisor's signature on the log for a given day is that the supervisor reviewed the log for that day.  Further, to the extent the log shows any deficiency, Morales testified that he raised the sufficiency of the log with the shift lieutenant who ordinarily supervises the corrections officers whose activities are intended to be documented by the log.  Exhibit 1, Dep. of Carlos Morales, Vol. II, Dec. 8, 2023, 106:2 – 110:26.

Defendant disputes that the information shown on the log at the time Morales signed it is material to any claim against him in his individual capacity.  At most, it shows that Morales

became aware that it was "possible" Plaintiff had not been offered a shower or recreation on January 13, 2020.  Id., 108:4-13.  It does not show any unconstitutional conduct on the part of Morales in his individual capacity.  Plaintiff offers no evidence that Morales saw logs for any other day.

Further, Plaintiff's own assertions as to other facts tend to show that she was unable to recreate on January 13, 2020.  For her UMF 30, Plaintiff cites to the deposition of Beatrice Parraz (Doc. 162-3, 67:21 – 68:6) for the proposition that during the time she roomed with Parraz, Plaintiff was in such pain from her knee injury that "every time" she went to the bathroom she would scream.  Plaintiff offers no evidence about how she would have recreated while in such pain, or when in her incarceration she could walk.

Finally, to the extent this UMF is intended to show that Plaintiff was in administrative segregation or otherwise punished, it is disputed.  The "segregation" log was used because the jail did not have a form for medically housed inmates.  Exhibit 1, 182:8-21.  Plaintiff was not in the medical cell for disciplinary purposes.  Doc. 168-4, ¶ 7.

9.      Disputed.  Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 4-5.  The evidence cited shows that Morales testified he simply did not know whether Plaintiff had recreation during the periods specified, or not.

Morales disputes that this fact is material.  Plaintiff herself admits in her Amended Complaint that she suffered from a fractured tibial plateau when she arrived at the jail.  Doc. 16, ¶¶ 37-38.  Plaintiff herself contends that she was suffering the effects of alcohol and drug withdrawal when she arrived at the jail.  Id., ¶ 100.  Plaintiff does not make a contention about when she could have participated in any recreation, or what kinds of recreation she would have been able to do, gradually or otherwise.  According to Plaintiff's own Motion, Morales only saw

one day of a log—January 13, 2020—and Plaintiff has failed to show what if any recreation she may have been able to do prior to that date.

Further, this UMF is not material to any claim against Morales in his individual capacity. He is not alleged to have taken action personally to prevent Plaintiff from receiving recreation. He is not alleged to have reviewed the segregation logs on any day other than January 13, 2020. Even assuming a lack of recreation became a constitutional violation *at some point*, which is not conceded, Plaintiff has failed to show that a lack of recreation prior to January 13, 2020 (when she could not ambulate) rose to the level of a constitutional violation by Morales in his individual capacity.

10.     Not material to any claim against Morales in his individual capacity. Plaintiff cites to no evidence that Morales had the day to day job of providing recreation to either Parraz or Plaintiff. Plaintiff cites to no evidence that Morales directly supervised any person who did have that job. Plaintiff cites to no evidence that Morales knew of Parraz not being offered recreation. In fact, there were multiple supervisory layers between Morales and the officers who directly provided daily services. Exhibit 1, 181:17 – 182:2.

11.     Not material to claims against Morales in his individual capacity set forth with regard to UMF 8-10 above.

Disputed for failing to meet the best evidence rule. Fed. R. Evid. 1002. Plaintiff has failed to establish the policies that she contends were violated.

12.     Disputed as to Morales in his individual capacity. Plaintiff cites to Morales' deposition several times. The first and third citations (137:3-16, 130:6-21) contain objections questions because, *inter alia*, they ambiguously refer to "you." Morales was not testifying that

he, in his individual capacity, violated the natural light policy or recreation policies. Exhibit 2, Second Declaration of Carlos Morales, ¶ 3.

The second citation (121:4-12) is not material to claims against Morales in his individual capacity, because fails to show that Morales had any involvement with painting the windows. He did not have such involvement. Doc. 168-4, (First) Declaration of Carlos Morales, ¶¶ 12-13. He did not have authority to change the physical configuration of the jail structure, including the painted windows. Exhibit 2, ¶ 5. The windows were already painted when Morales became warden the month before Plaintiff's incarceration. Exhibit 3, deposition of C. Buster, Vol. II, 266:23 – 267:15; Doc. 168-4, (First) Declaration of Carlos Morales, ¶ 2.

Plaintiff fails to cite to any evidence that Morales created the policy alleged to have been violated, or any authority to change the policy. Plaintiff admits that the windows in other areas of the jail were also painted, and therefore an alternative housing assignment would not have allowed her to have unpainted windows.

The fourth citation (131:1-23) does not purport to speak to any conduct of Morales, and certainly not in his individual capacity.

The fifth citation (132:3-20) is exculpatory as to Morales in his individual capacity, and establishes an issue of fact that precludes summary judgment. It shows that he brought the issue of the painted windows to the attention of Defendant Lincoln County so that it could be addressed. It does not show any improper conduct on the part of Morales in his individual capacity.

13.    Disputed. The cited testimony violates the best evidence rule. Fed. R. Evid. 1002. It purports to establish a policy not attached to Plaintiff's motion. There is no evidence in

the record that the policy alleged was in fact promulgated, and was in effect for the subject jail on any given date.

Defendant disputes that the cited testimony, even if deemed admissible, establishes any material fact as to Morales in his individual capacity. On its face, the testimony concerns inmates who are in disciplinary segregation. Plaintiff was not in disciplinary segregation. She was in a medical cell. Doc. 168-4, ¶¶ 4-7. Plaintiff does not cite to any evidence establishing a policy for how detainees with, e.g., fractured tibial plateaus such as Plaintiff, are to receive recreation, or how any such policy may have been violated. Further, as noted above in response to UMFs 8-10, Morales simply was not among the persons who offered/provided recreation to inmates. The only evidence about his knowledge (while Plaintiff was in the medical cell) of Plaintiff's access to recreation is that he knew the log for January 13, 2020, was not adequately completed, and he raised the issue with a shift lieutenant. See Exhibit 1, Dep. of Carlos Morales, Dec. 8, 2023, 106:2 – 110:26.

14.     Disputed and immaterial. Here again, Plaintiff relies on a testimony given in response to an ambiguous question, made over objection, that fails to distinguish between official capacity and individual capacity claims. While the jail itself may have a responsibility to provide recreation, Plaintiff fails to show that Morales had a direct responsibility to cause correctional officers to provide recreation for a given inmate, particularly one who was unable to walk, like Plaintiff. The evidence is that there are multiple layers of supervisors between Morales and the correctional officers who would offer inmates recreation, including shift supervisors, lieutenants, and the assistant warden. See response to UMF 10 above.

15.     Disputed. Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 5.

Not material as to claims against Morales in his individual capacity. The evidence is that there are multiple layers of supervisors between Morales and the correctional officers who would offer inmates showers, including lieutenants and the assistant warden. See response to UMF 10 above. Plaintiff cites to no evidence that Morales knew of any occasion when Plaintiff had not been offered a shower for any length of time, much less a time so long as to constitute a constitutional violation.

16.    Disputed. Morales adopts and incorporates the response to UMF 15 above; the record shows that Plaintiff cannot keep her story straight on how many showers she took. Her allegations that she took 10 showers (Doc 16, ¶ 156) prove that the segregation logs to which she cites for this UMF do not document all the showers she took. Plaintiff has thus established, at most, a failure to document showers, not a failure to offer them.

Not material as to claims against Morales in his individual capacity. The evidence is that there are multiple layers of supervisors between Morales and the correctional officers who would offer inmates showers, including lieutenants and the assistant warden. See response to UMF 10 above. Plaintiff cites to no evidence that Morales knew of any occasion when Plaintiff had not been offered a shower for any length of time, much less a time so long as to constitute a constitutional violation. At most, Plaintiff has established that Morales had reason to believe she was not offered a shower on January 13, 2020; Plaintiff does not argue that she is constitutionally entitled to a shower every day. Further, Plaintiff has not cited any evidence that she was physically *able* to shower during the first two weeks of her incarceration. Indeed, she alleges that she was delirious during a substantial period of this time. Doc 16, ¶ 100.

17.    Disputed and immaterial as to Morales in his individual capacity. The testimony cited does not purport to establish that Morales had a duty *individually* to inspect inmates for

their cleanliness.  To the contrary, the testimony Plaintiff cites specifically states that awareness of an inmate not being clean would rise through the "chain of command."

Disputed because the testimony violates the best evidence rule.  Fed. R. Evid. 1002. Plaintiff cannot rely on a statute or policy to which she does not cite.  Plaintiff has not offered Morales as a legal expert to testify on the meanings of statutes.  Plaintiff cites to no evidence that any statute requires a warden individually to inspect each inmate for cleanliness.

18.     Disputed.  Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 5.

19.     Not disputed, but not material to claims against Morales in his individual capacity for the reasons set forth in the response to UMF 12 above.

20.     Not disputed, but not material to claims against Morales in his individual capacity for the reasons set forth in the response to UMF 12 above.

21.     Not disputed, but not material to claims against Morales in his individual capacity for the reasons set forth in the response to UMF 12 above.

22.     Disputed.  Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 6.

The testimony to which Plaintiff cites, the deposition of Keesha Chavez, refers to "issues" with the plumbing.  More importantly, the testimony is not material to Morales in his individual capacity, because it establishes that jail personnel would in fact address the "issues" by calling a plumber.  The testimony establishes that the whole facility had plumbing "issues," and thus Plaintiff fails to establish that there was anything about his particular cell that was unique.

Further, the deposition testimony of Beatrice Parraz, attached to Plaintiff's Motion as Exhibit 3 (Doc. 162-3), 9:1 – 10:14, states that the inmates need only ask for the toilet to be flushed and the guards would do so. The evidence establishes that literally all Plaintiff had to do was ask for the toilet to be flushed. Id. A jury could conclude that Plaintiff simply chose not to ask for the toilet to be flushed. Since there is evidence she refused showers and to clean her cell, a jury could conclude she chose her conditions, or that her failure to take the tiniest steps to alert jail personnel to the toilet operates to excuse any conduct of Morales and other jail personnel.

Defendant disputes that this fact is material as to any claims against Morales in his individual capacity. Morales did not have authority to spend more than $1,000 to make repairs Doc. 168-2, deposition of Morales, 172:13-15. The Facility Assessment Report to which Plaintiff cites establishes that the plumbing facilities were beyond their useful life, and needed complete replacement. See Doc 158-2, p. 9. If the disrepair of the sewer rose to a constitutional violation, then it was something for Defendants Lincoln County or CSG to address, not Morales in his individual capacity. See Exhibit 4, Contract between Defendant Lincoln County and Defendant CSG (showing obligation to make repairs), section 7(A)(3). Plaintiff cites to no evidence that Morales knew of any particular event of sewage backup that Plaintiff experienced, or that he failed to take reasonable efforts to resolve it.

23. Not material for the reasons set forth in response to UMF 22 above.

24. Disputed and not material for the reasons set forth in response to UMF 22 above. The testimony of Beatrice Parraz to which Plaintiff cites proves that there was an ability to have the water available wash hands and to eliminate any smell; Plaintiff merely needed to ask for water or to flush.

25.     Disputed and not material to claims against Morales in his individual capacity.  It is disputed because the UMF vastly overstates the cited testimony.  Ms. Parraz was housed with Plaintiff only five days. Plaintiff's UMF 4.  This UMF attempts to suggest that Plaintiff had no ability to wash her hands for 51 days ("When there was water, on…").  Further, the sentence after the cited testimony states that corrections officers brought filtered water to the cell.  The testimony itself is internally contradictory, because water needed to flush would be cold water.  The testimony is contradicted by the testimony of Keesha Chavez (which Plaintiff cites and relies upon for her UMF 22) that the inmates needed only to ask for the toilet to be flushed and the guards would do so.  At the very best, the testimony can only establish occasional delays getting cold water for less than five days.

More importantly, the cited testimony is not material to any claim against Morales in his individual capacity.  It does not state that any person brought to Morales' attention that Plaintiff had no cold water or was unable to flush her toilet.  For the reasons set forth above with regard to UMF 22, Morales lacked any ability to spend the money to replace the plumbing system.  If the lack of cold water (or the presence of scalding hot water) constituted a constitutional violation, then the violation is in the municipality's failure to invest in its plumbing system—an official capacity claim—and not based on any conduct of Morales in his individual capacity. See response to UMF 22 above (identifying Morales' limited authority to make expenditures, and the contract providing the obligation of persons other than Morales in his individual capacity to make repairs to the facility).  Plaintiff's theory would have Morales act as all purpose scapegoat for any condition that existed when he became warden the month before her incarceration; or fault him for not having a magic wand to fix any problem at the jail, whether he was aware of it or not.

26. Disputed and immaterial. Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 6. At most, the testimony shows that Plaintiff ran out of toilet paper one time, and does not state that Plaintiff asked for more toilet paper and was denied. It cites to no damage as a result of running out of toilet paper the one time.

Further, this fact is not material to the claims against Morales in his individual capacity. Plaintiff does not cite to evidence that Morales knew she ran out of toilet paper, or that having such knowledge he deprived her of any toilet paper. It cites to no evidence that any conduct of Morales had anything to do with whether toilet paper was available to Plaintiff.

27. Disputed. The testimony does not show Plaintiff was "forced" to eat next a toilet. The evidence is that when inmates asked for the toilet to be flushed, it was flushed. See response to UMF 25 above.

The UMF is not material to claims against Morales in his individual capacity. Defendant incorporates his responses to UMFs 22 and 25 above.

28. It is immaterial that the night light would "not always work," as contended. The cited testimony does not establish the number of nights the night light would "not always" work. It relies in part on the testimony of Presli Stevenson, who was housed with Plaintiff for an unspecified number nights, and does not state that the night light did not work for all those nights. See Doc. 162-8, 29:14-17. The UMF simply fails to prove anything of constitutional significance.

Furthermore, the second citation upon which Plaintiff relies is exculpatory. It shows that the jail officials worked to address the lighting issue, a far cry from deliberate indifference. Doc. 162-6, 57:12-22.

Finally, it is not material to claims against Morales in his individual capacity. The UMF fails to establish that Morales knew that Plaintiff's cell in particular had a malfunctioning night light, or failed to address the malfunction once brought to his attention.

29. Immaterial. The cited testimony does not establish that it was cold in Plaintiff's cell. It mentions the shower, but does not state there was not hot water for showers.

Further, Plaintiff cites to no evidence that Morales caused the booking area to be cold. Plaintiff cites to no evidence that Morales had the ability to change the physical plant such that the jail could be warmer. Plaintiff cites to no evidence about the actual temperature of the booking area. Plaintiff's complaint about the temperature of the booking area, if true, is a problem with an aging facility that Morales had no authority or ability to change, not evidence of conduct of Morales in his individual capacity.

30. Disputed. Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 6.

31. Not disputed that Keesha Chavez testified as stated in the UMF, but disputed as to the meaning of the testimony and its admissibility as evidence upon which Plaintiff may rely in her Motion. Defendant lodged objections at the deposition. The questions were vague and compound. The testimony begs the question of what conditions Chavez was asked to consider and to offer an opinion.

Even if it could be determined what conditions the testimony addressed, the conclusory opinion testimony is not helpful to the jury and therefore not admissible. See Fed. R. Evid. 701(b); see also commentary to same (if "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule").

32.     Not disputed that Beatrice Parraz testified as stated in the UMF, but disputed as to the meaning of the testimony and its admissibility as evidence upon which Plaintiff may rely in her motion.

Regarding the purported smell, it is immaterial as to claims against Morales in his individual capacity, because at most it establishes that Plaintiff smelled on one day. It does not establish that Morales saw—or smelled—Plaintiff on that date. It is also immaterial for the reasons set forth above in response to Plaintiff's UMFs 15-17.

The testimony about how Plaintiff looked like a dog is not admissible opinion testimony, because it is not helpful to the jury. See Fed. R. Evid. 701(b); see also commentary to same (if "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule").

33.     Not disputed that Presli Stevenson testified as stated in the UMF, but disputed as to the meaning of the testimony and its admissibility as evidence upon which Plaintiff may rely in her Motion. Defendant lodged objections at the deposition. The questions were vague and compound. The testimony begs the question of what it means to be treated "like a human being."

Even if it could be determined what treatment the testimony addressed, the testimony is not helpful to the jury and therefore not admissible. See Fed. R. Evid. 701(b); see also commentary to same (if "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule"). The testimony could simply mean that Ms. Stevenson believes incarceration itself is demeaning or unfit for human beings.

Even if it could be determined what Stevenson meant by this testimony, it is immaterial as to claims against Morales in his individual capacity. The testimony does not purport to identify Morales as one of the persons to whom Stevenson was referring with her complaints that jail personnel treated Plaintiff poorly or in a way that Stevenson found demeaning. Nor does the UMF purport to show that Morales was present for any acts that Stevenson considered demeaning.

34. Not disputed, but not material. Plaintiff does not support her Motion with evidence that Morales did not periodically check on her, or that upon checking on her he observed any condition that would be unconstitutional if unabated *and* within his power to ameliorate. The evidence is that he did check on her, was nice, and treated her with compassion and respect. See Defendant's Additional Fact nos. 29 and 31 below.

35. Disputed. Plaintiff misstates the testimony, which was elicited over valid objections. The testimony is that would be atypical for "someone" not to be offered certain amenities. The testimony was not about Plaintiff and her name does not appear in the testimony. The questions were compound. Defendant adopts and incorporates the OC Response to this UMF set forth at Doc. 184, p. 7. Plaintiff was atypical in that she had a fractured tibial plateau.

36. Disputed. Morales adopts and incorporates the response to this alleged fact as set forth in the OC Response, p. 7.

37. Not disputed that Plaintiff asked to placed in the general population, but immaterial in the absence of evidence that her request was refused without reasonable basis. The cited testimony does not establish that Morales refused to move Plaintiff to general population. The testimony does not establish that Plaintiff remained in medical segregation longer than necessary for her medical needs. In short, the testimony does not mention Morales or any

conduct attributed to him. The UMF is thus immaterial to the claims against Morales in his individual capacity.

I. **Defendant's Additional Material Facts ("AMF") Precluding Summary Judgment**

1. Before being taken to jail, Plaintiff was taken first to the Lincoln County Medical Center ("Hospital") for evaluation. Amended Complaint (Doc. 16), ¶¶ 38-39.

2. Plaintiff was evaluated at the Hospital and then cleared for release to the LCDC. Id., and deposition of Anita Hittle, 75:21 to 76:2, attached as Exhibit 1 to Doc. 168.

3. Morales did not have authority to assign Plaintiff to the medical housing area of the LCDC. Morales deposition Vol. 2, 177:3-5, attached as Exhibit 2 to Doc. 168.

4. Morales did not have authority to remove Plaintiff from being assigned to medical observation. Id., 182:3-7.

5. LCDC did not have the discretion to refuse to book an inmate into LCDC after an arresting agency presented LCDC with a hospital clearance. Id., 22:10 – 23:15.

6. Once Plaintiff was placed in medical observation, it was the responsibility of medical personnel, not Morales, to monitor her medical condition and to call a doctor if necessary. Id. 28:8-17.

7. Jail medical personnel advised Morales that Plaintiff had suffered a fracture to her lower leg and should be placed in a medical observation cell because of her fracture. Declaration of Carlos Morales, ¶ 4, attached as Exhibit 4 to Doc. 168.

8. Morales deferred to medical personnel and approved the assignment of Crystal Buster to a medical cell in the booking area of the LCDC. Id., ¶ 5.

9.     During Morales' career in corrections, he always relied on medical personnel to make medical decisions, including decisions about where to house inmates on the basis of a medical condition, because they have medical training that he does not have.  He does not believe himself qualified to second guess or overrule a decision made by jail medical personnel—nurses or doctors—to place an inmate in medical housing based on the inmate's medical condition.  Id., ¶ 6.

10.     Plaintiff was not placed in the medical cell in the booking area as a punishment. Id., ¶ 7.

11.     Morales was not present during observations and evaluations of Plaintiff made by medical personnel at the LCDC.  Id., ¶ 9.

12.     Morales did not accompany Plaintiff on any medical or other visits outside LCDC during her incarceration.  Id., ¶ 10.

13.     Morales did not paint any windows black at the LCDC, nor did he direct any person to do so.  Id., ¶ 12.

14.     The windows at LCDC that were painted black while Plaintiff was incarcerated at LCDC had been painted black before Morales became warden.  Id., ¶ 13.

15.     Morales did not make the decision to decision to house medical inmates in the booking area.  Id., ¶ 14.

16.     When Nurse Hittle contacted Morales on December 25, 2019, she did not communicate to him that that Ms. Buster was at risk of a serious medical condition.  Rather, the only medical condition she mentioned was that Ms. Buster had a broken leg.  Id., ¶ 15.

17.     It was not within Morales authority to hire nurses, or to decide whether doctors and nurses should be hired.  Exhibit 1, Morales Deposition Vol II, 172:3-12.

18.     It was not within Morales authority to make expenditures at the jail greater than $1,000.  Morales deposition Vol. 2, 172:13-15, attached as Exhibit 2 to Doc. 168.

19.     It was not within Morales authority to retile the shower about which Plaintiff complains.  Id., 172:16-19.

20.     It was not within Morales authority to expand staffing levels of security personnel.  Id., 173:2-5.

21.     It was not within Morales authority to fire any jail security personnel. Id., 173:6-9.

22.     It was not within Morales authority to sets salaries or hourly wages for any employees of LCDC. Id., 176:24 – 177:2.

23.     Corrections officers were the persons primarily responsible for carrying out the activities listed in the segregation logs attached as Exhibit 6 to the Motion (Doc. 162-5), including but not limited to offering showers and recreation.  Exhibit 1, Deposition of Morales, Vol. 2, 181:13-16.

24.     Morales was not a direct supervisor of the corrections officers primarily responsible for carrying out the activities listed in the segregation logs; there were lieutenants and the assistant warden between them who supervised those officers.  Id., 181:17 – 182:2.

25.     According to Plaintiff, Morales had conversations with her, but the only thing she asked him for was that Ms. Parraz remain her cellmate, to which he agreed.  Exhibit 3, Deposition of C. Buster, Vol. 2, 263:24 – 264:22.

26.     Plaintiff testified that Morales did not enter Plaintiff's cell.  Id., 264:23 – 265:2.

27.     All the windows in inmate areas of the jail were painted, which Plaintiff knew from other times she had been incarcerated at the jail prior to the incarceration at issue in this action.  Id., 266:23 – 267:15.

28. Plaintiff admitted to her mother that Morales was nice to her and not a mean person. Exhibit 5 hereto, Deposition of K. Stevenson, 68:24 – 69:12.

29. If Plaintiff smelled foul, Morales did not notice the smell and it was not obvious to him. Exhibit 2, ¶ 4.

30. Morales attempted to fix the problem with the night lights in the booking area, but his efforts had to wait until the Lincoln County Commissioners approved having someone address the issue. Exhibit 6, Deposition of C. Estrada, 34:11-23.

31. Morales treated Plaintiff with respect and compassion. Id., 147:5-10.

32. Estrada worked in the booking area (where Plaintiff's cell was located). She did not observe Plaintiff to smell, but testified that Plaintiff refused showers. Id., 24:14-18, 26:24 – 27:14, 70:3-16, 65:1-5.

33. Plaintiff was provided cleaning supplies, was required to clean her own room but refused to do so. Id., 82:6 – 83:8.

34. The problem of cold in the booking area was because of the lack of a sally port at the booking area, which problem existed before Morales became warden and which Defendant Lincoln County undertook to repair before Morales became warden; Morales did not have control over the cause of the cold. Id., 72:12-20; Exhibit 4, Contract, section 7(A)(4)(b).

II. **ARGUMENT: Plaintiff fails to establish a prima facie entitlement to summary judgment. Furthermore, genuine issues preclude summary judgment.**

1. **Adoption of the OC Response and Joinder in MSJ.**

Defendant adopts and incorporates the argument section set forth in the OC Response (Doc. 184), including its adoption and incorporation of the evidence and arguments set forth in

the County Defendants' Motion for Summary Judgment (Doc. 167).  Defendant also adopts

the undisputed facts and argument in Doc. 168 (his own Joinder in Doc. 167).

### 2. Plaintiff is not entitled to summary judgment against Morales in his individual capacity as to Count IV.

Count is not brought against Morales in his individual capacity.  See Amended

Complaint (Doc. 16), p. 20; see also, Defendant Carlos Morales' Motion to Substitute the

Proper Party for All Claims Brought Against Him In His Official Capacity, and to Dismiss

Redundant Claim in Count IV of Plaintiff's Complaint (Doc. 164).  With regard to Count IV,

the Motion must be denied as to Morales in his individual capacity.

### 3. Morales did not deny Plaintiff exercise.

The universe of information Morales knew about Plaintiff's access to recreation is that

she possibly was not offered recreation on January 13, 2020, because a log lacked information

about it.  Response to UMF 8.  The evidence is that he addressed the log with a lieutenant.  Id.

Plaintiff was wheelchair bound at the time, and according to her own witness, she couldn't get

to the toilet without screaming in pain.  Id.  Plaintiff does not contend what recreation in

which she could have participated.  Response to UMF 9.

Further, Morales was not among the people who would ordinarily offer recreation to

inmates.  UMF 10.  There were multiple supervisory layers between Morales and such people.

Id., and AMFs 23-24.  Plaintiff had the opportunity to bring the alleged recreation issue to

Morales, AMF 25, she did not raise the issue with him.  Morales was nice to Plaintiff and

treated her with respect and compassion, so she had no reason to fear raising the issue.  See

AMFs 28, 31.

The question at issue in the Motion is not whether a jury couldn't possibly believe Plaintiff. It is whether it could reasonably disagree. Clearly it could, and accordingly the Motion should be denied.

### 4. Plaintiff did not suffer inhumane conditions, nor did Morales act with deliberate indifference.

Morales did not deprive Plaintiff of showers. Again, the universe of information about Morales' knowledge concerning Plaintiff's showers is contains in the January 13, 2020, log attached to Plaintiff's Motion. At most it showed she was not offered a shower on January 13, 2020. Morales' job was not to provide Plaintiff with showers personally; there were layers so supervisors between him and whose who had that job. AMFs 23, 24. Plaintiff refused showers. AMF 31. If Plaintiff smelled foul, Morales did not notice the smell and it was not obvious to him. AMF 29. Morales' observation was consistent with the officer who worked in the area of Plaintiff's cell, who also did not observe Plaintiff to smell. AMF 31. Estrada worked in the booking area (where Plaintiff's cell was located). She did not observe Plaintiff to smell. An issue of fact precludes summary judgment as to any contention that Plaintiff was forced to be unclean.

Morales did not deprive Plaintiff of natural light. Plaintiff's cell was the same as the others in that regard. AMF 27. Morales did not pain the windows. AMF 13. They were painted when he took the job the previous month. AMFs 14, 27. He had no authority to change the physical configuration of the jail, including the windows. Response to UMF 12.

Plaintiff failed to establish an inhumane condition based on the lack of night lights. She fails to establish how many nights the lights were inoperable. Response to UMF 28. The undisputed testimony Morales worked to correct the issue, so Plaintiff cannot establish indifference on him in his individual capacity. See AMF 30. Issues of fact preclude summary

judgment as to any contention that Morales in his individual capacity deprived Plaintiff of natural light, or plunged her into darkness.

The plumbing issues that Plaintiff asserts to not constitute a constitutional violation by Morales in his individual capacity. Plaintiff fails to show evidence that Morales ever knew off a sewer back up in her cell. The evidence is that when other inmates asked for the toilet to be flushed, it was flushed. Response to UMFs 22 and 25. The evidence is that the plumbing problems were systemic, and the entire system needed replacement. Morales had no financial authority to make such repairs. AMFs 18-19. Furthermore, Plaintiff cannot establish indifference, because the evidence is that plumbers were called to try to solve the problem. Response to UMF 22.

A jury could find that Morales inherited a mess of a system the month before Plaintiff's incarceration, and that it was not indifference on his part to not have a magic wand to fix a longstanding problem. Plaintiff herself established the longstanding problem, and having offered no evidence that it was feasible to fix the plumbing between the beginning of Morales' employment and the time she was incarcerated, she failed to meet her prima facie burden.

Plaintiff's argument section makes the mistake of failing to distinguish between what *could* constitute a constitutional violation and what *must* constitute one. Plaintiff leaves no room for the jury to simply disagree that the conditions were as unpleasant as she contends they were. At the very most, Plaintiff establishes that she may present her claims to a jury; she does not show entitlement to judgment as a matter of law.

Plaintiff closes her argument against Morales in his individual capacity with the contention that the alleged conditions were "cumulative[ly]" inhumane. Plaintiff's argument

seems calculated to discourage the difficult task of determine what Morales knew, when he knew it, and whether he was indifferent to it. The careful and detailed factual discussions above in section I and II show that Morales did not personally know of the facts Plaintiff contends (which "facts," as shown, wither under scrutiny), and addressed the ongoing problems he inherited to a degree that a jury could reject Plaintiff's claims.

The undisputed facts are that Morales was nice to Plaintiff, treated her with compassion and respect, gave her the one thing she ever asked of him, and made himself available for her to seek redress. She was placed in a medical cell based on her injury, and the decision to do so was made by medical personnel.

### Conclusion

Plaintiff's Motion ultimately fails to establish prima facie evidence of a claim against Morales in his individual capacity. The evidence establishes genuine fact issues of that preclude summary judgment. If Plaintiff can prevail on any claims, they are not the ones she brought against Morales in his individual capacity.

For the reasons set forth herein, Plaintiff's motion should be denied.

HALL & EVANS, LLC

By: */s/Steven L. Gonzales*
    Steven L. Gonzales
    125 Lincoln Avenue, Suite 225
    Santa Fe, NM 87501
    Telephone: (505) 417-3898
    gonzaless@hallevans.com
    *Counsel for Morales in his individual capacity*

I HEREBY CERTIFY that on this 17th day of April, 2024, I filed the foregoing using CM/ECF which caused all counsel of record to be served by electronic means.

  */s/Steven L. Gonzales*
    Steven L. Gonzales