## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**CRYSTAL BUSTER,**

 **Plaintiff,**

**v.**                                                    **No. 21-cv-01208 MLG/JHR**

**BOARD OF COUNTY COMMISSIONERS FOR
LINCOLN COUNTY, CORRECTIONAL
SOLUTIONS GROUP, LLC, CARLOS MORALES,
individually and in his official capacity, CARLY
REYNOLDS, individually, ANITA HITTLE,
individually, and STEVE CHAVEZ, individually,**

 **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION TO GRANT IN PART AND DENY IN PART BUSTER'S MOTIONS FOR SANCTIONS [DOCS. 158, 160].

THIS MATTER is before me on Plaintiff Crystal Buster's Motion for Sanctions #1 [Doc. 158] and Motion for Sanctions #2 [Doc. 160]. Defendants Board of County Commissioners for Lincoln County and Correctional Solutions Group, LLC (collectively "Defendants") jointly responded [Docs. 169, 171][1] and Buster replied [Docs. 173, 175]. United States District Judge Matthew L. Garcia referred these motions to me for proposed findings and a recommended disposition. [Doc. 199]. I will address the motions together because of the related nature and requested relief. For the reasons explained below, I **RECOMMEND** that the Court **GRANT IN PART** and **DENY IN PART** Buster's motions.

---

[1] Because Defendants jointly respond to Buster's motions and align in their defenses, I do not differentiate between their actions for purposes of this report and recommendation considering sanctions.

## I.  BACKGROUND[2]

This case concerns Buster's allegedly inhumane conditions of confinement while a pretrial detainee in Lincoln County Detention Center. Buster alleges that she was kept in "solitary confinement for 51 days in squalid conditions" with no recreation and few hygiene opportunities. [Doc. 160, p. 2, 3].  She specifically alleges that the toilet in her cell "would back up and feces would spill onto the floor." [Doc. 158, 1, 2]. Buster claims that her mental and physical health deteriorated precipitously under these conditions. [Doc. 160, p. 3]. She contends that individual defendants knew of and were indifferent to these conditions. *Id.*

This case was filed in federal court on December 21, 2021. [Doc. 1]. Buster generally claims that Defendants violated her civil rights by failing to provide her humane conditions and medical care for a broken knee after she was arrested and taken into custody. *See* [Doc. 16]. Buster makes four specific claims: (1) violation of procedural due process; (2) violation of the Fourteenth Amendment through inhumane conditions of confinement and inadequate medical care; (3) negligent provision of medical care; and (4) violation of the Fourteenth Amendment through a custom and policy of violating constitutional rights. *See id.*  Buster seeks compensatory and punitive damages. *Id.* at 21.

Buster filed a motion on March 23, 2023, to compel Defendants to respond to several discovery requests. [Doc. 69]. I granted that motion and, in relevant part, ordered Defendants to answer requests for production of annual inspection reports and audits. [Doc. 90]. I gave Defendants 30 days to "produce the requested documents or explain why they cannot produce same" and ordered them to pay Buster's attorney fees for the motion. *Id.* at 12. The parties engaged

---

[2] Only the factual and procedural history relevant to these sanctions motions is recited here.

in discovery over the next several months and Buster filed these two motions for sanctions on February 8 and 12, 2024, respectively. [Docs. 158, 160]. Several dispositive motion filings followed. [Docs. 162-168].

**A. Buster's Motion for Sanctions #1**

1. Motion

Buster's first motion concerns the Facility Assessment Report. [Doc. 158]. I previously ordered Defendants to produce this report within 30 days of my order to compel or explain why production was not possible. *Id.* at 3; *see* [Doc. 90]. Defendants did not produce or explain in that time frame but produced the report after discovery ended. *Id.* at 3. Buster contends that Defendants violated my order, abused discovery, and thereby "blame [Buster] for the unsanitary conditions in her own cell rather than accept the fact that the sewer system needed complete replacement as outlined in the [facility assessment report]." *Id.* Buster requests a default judgment sanction for intentional late disclosure. *Id.* at 8. She alternatively proposes a "factual finding in the form of a jury instruction":

> *Plaintiff's toilet repetitively backed up at least two times a week through no fault of her own, and that evidence of the malfunctioning plumbing system in the jail was intentionally withheld from Plaintiff during the preparation of her case.*

*Id.* at 7.

She frames this instruction as "a fair summary of the facts" while recognizing the phrase "intentionally withheld" is "potentially controversial." *Id.* at 7-8 (citing attachment Exhibit 3 in support). Buster maintains intent to conceal is established by evidence that the county manager received the report twice in April 2022. *Id.* at 8. The "inescapable conclusion," she concludes, is that the Defendants exhibited "deliberate interference" to inhumane conditions warranting serious sanctions up to and including default judgment. *Id.* She also wants to bar Defendants from proposing that Buster caused "any unsanitary conditions in her cell." *Id.* at 7.

2.  Response

Defendants respond that Buster lacks prejudice from the late disclosure because other evidence gives "ample information regarding the actual condition of the plumbing." [Doc. 169, p. 2] (contending that the *Ehrenhaus* factors do not support default judgment). *Id.* at 2, 3. They decry the proposed instruction as misleading and cite deposition testimony contradicting allegations that the toilet frequently malfunctioned and overflowed. *Id.* at 3-4; *see* [Doc. 169-1]. They also list other evidence documenting various repairs and reports on facility sewer lines and drains. *Id.* at 4-5. Defendants therefore contend that the "harmless" late disclosure does not cause "serious inconvenience or prejudice" deserving serious sanctions. *Id.* at 5-6.

3.  Reply

Buster says Defendants' response "mak[es] no attempt to explain why the facility Assessment Report was withheld or why the county manager failed to mention he had hired a company to audit the jail's plumbing system." [Doc. 173, p. 2]. She posits that Defendants argue lack of prejudice to avoid more sanctions after violating the order to compel. *Id.* at 3. Finally, Buster disputes Defendants' factual assertions with contrary statements and says their plumbing invoices are unreliable *Id.* at 5.

**B.  Buster's Motion for Sanctions #2**

1.  Motion

Buster's second sanctions motion concerns allegedly spoliated evidence in the form of various logs: (1) shift supervisor logs, or "pass down log" emails, documenting notable shift events in the detention center from December 24, 2019 through February 24, 2020; (2) segregation logs for December 24, 2019, January 6-12, 2020, and February 3-9, 2020; and (3) classification logs "involving [] Defendants' decision to place [] Buster in the holding area of the Lincoln County

Detention Center." [Doc. 160, p. 2]. Buster says this evidence is critical to discovering whether individual defendants "acted with indifference to these inhumane conditions of confinement." *Id.* at 3. She alleges failure to preserve these logs violated Defendants' own recordkeeping policy and Buster's tort claim and preservation notice. *Id.* She also bolsters her spoliation claim with a timeline of relevant events: (1) her tort claim notice and preservation letter sent in March 2020; (2) the public records requests sent to Defendant Lincoln County in July 2020 and June 2021; (3) the lawsuit filed in December 2021; and (4) Defendant CSG's supplemental production of three pass-down log emails in October 2023. *Id.* at 3-4.

      *a.  Pass-down log emails*

      Buster explains the importance of late disclosure of the pass down emails:

> Up until this moment, [Buster] had been laboring under the impression that these records had never been created and so was surprised by the production of three (3) emails [attached hereto]. This response contradicted Defendants' previous discovery answers which stated that all responsive emails had been disclosed . . . Defendants' counsel indicated that a final search was performed [after Buster's Rule 37 letter] and confirmed that no further emails, including pass down logs, were located. [] It was then revealed for the first time, during the deposition of the warden, that a shift supervisor's information log was created and maintained electronically, in at twice daily "pass down log" email . . . The warden testified that there were two emails created each day that met the description of a shift supervisor's log and that they were distributed to staff to alert them of the important events of each shift.

*Id.* at 4-5. Assuming two such emails generated each day of Buster's confinement, she extrapolates that "Defendants have therefore lost or destroyed approximately ninety-seven emails." *Id.*

      Buster presents several reasons to impose sanctions, including even Defendants' expert Gary Christensen, Ph.D. who testified that "the pass down logs should capture if Ms. Buster's cell toilet backed up and sewage flooded her cell, if she was refusing food or was on a hunger strike, and if she refused recreation for weeks at a time." *Id.* at 6 (citing Exhibit 10). Buster says she needs the remaining emails to resolve four important factual issues concerning deliberate

indifference: (1) reasons for placing her in segregation; (2) the unsanitary conditions from plumbing issues; (3) her refusal of meals; and (4) her persistent vomiting. *Id.* at 6-7 (also noting potential records of medical rounds, recreation time, and general supervision). Buster believes the emails' disappearance "was not simply unfortunate" and contends that no other evidence can replace their content. *Id.* In support she cites Dr. Christensen's opinion that the "big [] lapse" in preserving documents amounts to "negligence or incompetence" *Id.* at 8.

Buster proposes sanctions under Rule 37(e) for failure to preserve the pass down emails as electronically stored information. *Id.* at 10. She argues that the pass down emails meet the initial Rule 37(e) requirements: (1) they qualify as electronically stored information; (2) the information therein is lost and cannot be replaced through discovery; (3) the information should have been preserved in anticipation of litigation; and (4) Defendants failed to reasonably preserve the information. *Id.* at 11-12 (citing Fed. R. Civ. P. 37(e)). Buster urges the Court to infer that Defendants intentionally destroyed the emails, warranting an adverse inference or default judgment sanction. *Id.* at 12, 13 (citing Fed. R. Civ. P. 37(e)(2)).

She also claims that the five guiding factors laid out in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) favor default judgment: (1) degree of actual prejudice; (2) the degree of interference with the judicial process; (3) the party's culpability; (4) whether the court previously warned of a possible dismissal sanction; and (5) the utility of lesser sanctions. [Doc. 160, p. 14] (internal citations omitted). She reasons:

> [Defendants] have destroyed records that required preservation. It is inescapable that this was done on purpose. The only logical conclusion to be drawn from this pattern of disregard . . . is that Defendants deliberately concealed this evidence with the hope of avoiding liability and otherwise minimizing [Buster's] damages. By doing so, Defendants could set a dangerous precedent . . . unless the Court imposes a harsh penalty.

*Id.* at 14-15. Buster alleges prejudice because the missing evidence "goes to a critical issue and the evidence at hand is conflicting." *Id.* at 15 (internal case citation omitted). She again cites Dr. Christensen's testimony that Defendants' "negligence or incompetence" caused the lapse and complicated the litigation. *Id.* She says she cannot fully prepare for trial absent the pass down emails and will be "tip-toeing through the minefield of Defendants' missing or questionable evidence." *Id.*

   *b. Segregation and Classification Logs*

  Buster also requests sanctions for missing classification and segregation records. She contends the segregations records would show "Defendants knew of her squalid conditions of confinement, that her toilet overflowed often, that she was not provided with recreation or exercise, natural light, and only occasional showers, and blatantly disregarded these inhumane conditions." *Id.* at 7. While some segregation records were produced, Buster says the logs for the critical time frame of January 6-12, 2020, remain missing. *Id.* at 8. She claims the information in the missing segregation records "goes to the heart of Ms. Buster's deliberate indifference claims" and no other evidence can show whether Buster received the proper care in segregation. *Id.* (explaining that Buster's memory is unreliably because her mental health declined during segregation).

  Buster alleges that classification records would have shown why she was "placed in a booking area cell in isolation without justification." *Id.* at 9. She argues that the complete lack of any classification records implies she was intentionally isolated without justification and in violation of her rights. *Id*. She also says conflicting testimony surrounding who placed Buster in isolation and the reasons for that decision make the classification records even more crucial to her case. *Id.* (citing testimony of Defendants Morales, Hittle, and Reynolds).

Buster concludes that failure to preserve these classification and segregation records amounts to spoliation. *Id.* at 16. The test for spoliation, she says, assesses whether a party had a duty to preserve evidence because of imminent litigation and whether the destruction of evidence prejudiced the adverse party. *Id.* (internal citation omitted). A spoliation finding enables sanctions such as striking witnesses, adverse inferences, or dismissing claims; Buster requests dismissal because "three different groups of evidence were destroyed." *Id.* at 17. She alternatively asks for jury instructions directing adverse inferences from the missing evidence. *Id.* at 17-18.

2. <u>Response</u>

Defendants counter that a default judgment or jury instruction sanction is too severe and not proportional to the dispute. [Doc. 171, p. 3]. Defendants maintain that they produced documents, including some "pass-down log emails," responsive to the preservation letter and discovery obligations. *Id.* at 3, 4 (citing facility employee testimony). Nonetheless, Defendants say they otherwise "cannot determine why [the records] are incomplete." *Id.* at 5. They admit to not being able to locate classification records and pivot to witness testimony stating that medical observation informed Buster's classification. *Id.*

Defendants urge that "gaps" in the records have not prejudiced Buster or impaired the judicial process. *Id.* They propose she could cure any prejudice through deposition testimony and proffer a litany of documents which purportedly contain the information she seeks. *Id.* at 6. Defendants ultimately characterize Buster's prejudice claim as "exaggerated" and her sanctions request as "disproportionate to any real impact on the case." *Id.* Defendants summarize that Buster failed to show any intent to conceal or delay discovery and already received substantial evidence on the disputed subject. *Id.* at 7. Thus, Buster's requested sanctions would be "extremely unjust . . . under any sense of proportionality." *Id.*

## II.   LEGAL STANDARDS

The Federal Rules of Civil Procedure empower a court in its discretion to assess sanctions for discovery abuse and misconduct. *See generally* Fed. R. Civ. P. 37. If a party disobeys a discovery order, Rule 37 allows the court several options: instruct that certain matters or facts be taken as established, prohibit the offending party from introducing certain claims, defenses, or evidence, strike pleadings, stay the case, dismiss all or part of the case, enter a default judgment, or treat the noncompliance as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). The drastic nature of a default judgment requires that the predicate violation be "the result of willfulness, bad faith or some fault of the party rather than inability to comply." *Romero v. CoreCivic*, Inc., No. 1:21-CV-0544 KG/DLM, 2023 WL 5844249, at *4 (D.N.M. Sept. 11, 2023) (citing *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987)) (internal quotation and subsequent citation omitted). A dismissal or default judgment sanction should be used sparingly because the judicial system strongly prefers to resolve cases on their merits. *Ellis-Hall Consultants, LLC v. Hofmann*, No. 20-4040, 2022 WL 3972093, at *4 (10th Cir. Sept. 1, 2022) (internal citation omitted).

## III.   ANALYSIS

I first address the second of Buster's motions.  [Doc. 160]. I then include Buster's first Motion for Sanctions in my discussion of the *Ehrenhaus* factors.

### A.  Defendants failed to preserve the pass-down emails.

I propose to find that Defendants violated Rule 37(e) with respect to the pass down emails. A court may sanction a party for failing to reasonably preserve irreplaceable electronically stored information in anticipation of litigation. Fed R. Civ. P. 37(e).  If there is prejudice to the other party, the court may impose "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P.

37(e)(1). If the court finds intent to deprive the other side of using the information in litigation, it may instruct the jury to presume that the lost information is unfavorable to that party or end the action through dismissal or default judgment. Fed. R. Civ. P. 37(e)(2)(A)-(C).

     1.  <u>The pass down log emails meet the Rule 37(e) prerequisites.</u>

I propose finding that the pass down log emails meet the prerequisites under Rule 37(e). First, there is no dispute that these emails documenting shift activities (transports, transfers, releases, etc.) are electronically stored. *See* [Doc. 160-7, p. 2]. Second, other than the three emails produced, the emails are lost and cannot be replaced through additional discovery. *See* [171-1, p. 2]. Deposition testimony confirmed that "[a]ny electronic records, whether [] describe[d] as an email or not" (including archives) had been searched for "electronic pass down logs" to no avail. *Id.* Nor did change of management or ownership cause the loss. *Id.*

Third, the pass-down emails should have been preserved in anticipation of litigation.  A party is on notice of its duty to preserve "any time [it] receives notification that litigation is likely to be commenced." *Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *4–5 (D. Kan. Feb. 8, 2016) (internal citation omitted). The party must then "suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant evidence." *Id.* (internal citation omitted).  Buster's preservation letter specifically asked Defendants to "preserve all documentation associated with these incidents, including but not limited to written documentation." [Doc. 160, p. 1]. Pass-down emails describing Buster's detention are squarely "written documentation" "associated with [the underlying] incidents." *See id.*

Defendants should have, and failed to, take reasonable steps to preserve the pass down emails. Reasonable steps include a "litigation hold" which requires more than simply alerting the

relevant employees of impending litigation. *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1295 (D.N.M. 2016). Counsel must "go beyond mere notification and take affirmative steps to monitor compliance" because "[a]t the end of the day . . . the duty to preserve and produce documents rests on the party." *Id.* (internal quotation marks and citation omitted) (measures include talking to "key employees in an effort to understand how evidence will be stored" to "continually ensure that the party is preserving relevant evidence"). Defendants here failed to take reasonable steps to preserve pass down emails to the detriment of the search for truth about Buster's treatment. Defendants offer no evidence that systems were in place to ensure retention of relevant documents. Available evidence indicates the opposite. *See* [171-1, p. 2] (stating "all documents would have been stored in the storage unit . . . "known as 'the barn'" where staff went to look for relevant documents). Thus, I find that all Rule 37(e) prerequisites have been met.

    2.  <u>The failure to preserve pass down log emails prejudiced Buster.</u>

    I next propose finding that Defendants' failure to preserve the pass down emails prejudiced Buster. Prejudice generally exists where the destroyed evidence "goes to a critical issue and the evidence at hand is conflicting." *Browder*, 187 F. Supp. 3d at 1299 (internal citation and quotation omitted); *see In re Gold King Mine Release in San Juan Cnty., Colorado, on Aug. 5, 2015*, No. 18-CV-319-WJ, 2022 WL 2230759, at *7 (D.N.M. June 21, 2022) (finding prejudice in part because witness testimony "is not enough to replace the destroyed documents because it is unlikely they will be able to remember the specific contents of each destroyed work order") (internal quotation omitted).

    I propose finding that losing the pass down emails prejudiced Buster because neither she (nor the Court) can ascertain how important the information contained in the emails would have been to her case. *See Browder*, 187 F. Supp. 3d at 1299 ("That Plaintiffs brought a motion for

summary judgment without relying on the information [in the missing cell phone] does not make their request for the phone immaterial or irrelevant"). Here, available evidence conflicts on important issues such as whether Buster refused meals during a "hunger strike" and whether plumbing issues made Buster's cell unsanitary. [Doc. 160, p. 7]; *compare* [Doc. 160-16, p. 2] (Keesha Fielder testified that Buster refused to eat until she could go to general population) *with* [Doc. 160-15, p. 2] (Buster denied a hunger strike).  Pass down logs would presumably describe whether Buster's toilet backed up from structural problems or whether she clogged it herself, whether she repeatedly refused meals, or whether she demonstrated other physical or behavioral issues. *See* [Doc. 160-7, p. 2]; [Doc. 160-9, p. 2-3]. Without clarification from contemporaneous documents, conflicting information rendered expert Dr. Christensen unable to opine on important issues. [Doc. 160-10, p. 2]. These circumstances indicate prejudice to Buster.

       3.   <u>There is insufficient evidence that Defendants intended to deprive Buster of the emails.</u>

However, I propose finding the evidence insufficient to deduce that Defendants acted with intent to deprive Buster of the pass down emails. Buster urges that Defendants' "deeply disturbing" behavior is "inescapable[y]" intentional. [Doc. 160, p. 14]. She proposes that Defendants acted "with the hope of avoiding liability and otherwise minimizing [Buster's] damages, thereby setting "dangerous precedent." *Id.* at 14, 15. Buster argues that the available evidence makes it "reasonable to infer" purposeful destruction. *Id.*  at 14. She relies on several key facts: two pass down emails per day were generated during shift changes, Buster sent Defendants a preservation letter when she filed suit, she received only three pass down log emails, the Court compelled production of any remaining emails, and no additional emails were produced. *See* [Doc. 90] (compelling production); [Doc. 160-7, p. 2, 3] (warden and individual defendant Morales testifying on twice daily pass down email creation).

I propose finding these facts do not support an inference that Defendant intended to deprive Buster of the pass down emails. It is evident that informative documents are missing. It is also clear that poor internal communication, chaotic management, and general apathy created conditions adverse to preserving and producing key records and emails. Dr. Christensen identified negligence and incompetence as catalysts for the worst "lapse" in documentation he had confronted in his expert experience. [Doc. 160-10, p. 3, 6]. Dr. Christensen did not conclude that Defendants most likely destroyed the documents on purpose; incompetence and negligence cabin his opinion on Defendants' intent.

Therefore, Dr. Christensen's testimony does not bolster Buster's intentional spoliation. Nor does Buster's citation to cases from outside the Tenth Circuit persuade me. [Doc. 160, p. 12, 13]. Absent more convincing evidence of intentional concealment, loss or destruction, I recommend declining to find that Defendants intended to deprive Buster of the pass down emails.

**A. Defendants' failure to preserve the segregation and classification logs amounts to spoliation.**

1. Spoliation

Spoliation is "the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Browder*, 187 F. Supp. 3d at 1294*; Lamb v. Cordero*, No. 1:22-CV-00485-WJ-LF, 2024 WL 2890539, at *2 (D.N.M. June 10, 2024), *report and recommendation adopted,* No. 1:22-CV-00485-WJ-LF, 2024 WL 3226753 (D.N.M. June 27, 2024) (noting spoliated evidence "is presumed to be unfavorable to the party responsible for its destruction").  When considering spoliation sanctions, courts assess 1) the culpability of the party who lost or destroyed the evidence and 2) whether the loss or destruction of the evidence actually prejudiced the opposing party. *Browder*, 187 F. Supp. 3d at 1297.

Classification and segregation logs are not electronically stored information under Rule 37(e) but the appropriate analysis is similar. Defendants had a duty to preserve the segregation and classification logs from the time they received Buster's preservation letter. *See* [Doc. 160-1]; *Browder*, 187 F. Supp. 3d 1288, 1295. The segregation logs document the observations of detention officers who checked on Buster. [Doc. 160, p. 8]. They presumably would show whether she refused meals, took showers, had recreation time, etc. *Id.*  Buster says the two weeks' worth of information in the missing logs is irreplaceable and directly relates to her deliberate indifference claims. *Id.* at 8, 17.

The classification records document Buster's housing assignment and the reasons "she was placed in a booking area cell [] in isolation." *Id.* at 9.  She alleges Defendants violated her rights by segregating her without a hearing or subsequent review. *Id.* Defendants generally counter that her medical condition necessitated isolation. *Id.* However, testimony about the decision-making process conflicts, particularly about who made the decision. *Id.* (citing deposition excerpts of Morales, Hittle, Reynolds and Chavez).

Knowing what measures Defendants took to monitor Buster's physical and mental conditions and her cell environment is elemental to resolving her conditions of confinement claims. Moreover, knowing what actions Defendants took in response to observations and complaints of mental decompensation and unsanitary conditions is critical to her deliberate indifference case. The lack of clarity from deposition testimony does not inspire confidence that the records were either neutral or favorable to Defendants.  Instead, the available evidence supports a reasonable inference that the records were lost or destroyed through, at least, negligence.

2. <u>Culpability</u>

Culpability measures the offending party's "degree of fault" in losing or destroying the evidence "along a continuum . . . ranging from innocence through the degrees of negligence to intentionality." *Id.* (internal citation omitted). Gross negligence in this context is denoted by "a failure to exercise even that care which a careless person would use." *Browder*, 187 F. Supp. at 1299, n. 4 (but declining to find that the absence of a litigation hold *per se* constitutes gross negligence). The evidence allows a reasonable inference that Defendants disregarded Buster's preservation letter, failed to implement a workable litigation hold or ensure that employees enforced it, failed to keep records in required by the facility's own policies, and failed to timely produce relevant evidence, leading to the conclusion that Defendants exercised no more than minimal care in preserving Buster's records. *See id.* Buster's allegation that Defendants knowingly and intentionally destroyed logs seems outstrip the available evidence, not identifying any discrete event nor directive to exclude negligence as a cause. *See Schmidt v. Shifflett*, No. CV 18-0663 KBM/LF, 2019 WL 5550067, at *4 (D.N.M. Oct. 28, 2019).

I propose the Court find that Defendants did not exercise the care of even a careless person when they failed to preserve any classification logs and critical segregation logs, thereby demonstrating culpability akin to gross negligence. Even a careless person would have recognized that documents explaining why Buster was put in segregation and what happened to her during segregation should be kept for use during her lawsuit about the conditions of her segregation confinement. As with the loss of up to 97% of the contemporary pass-down emails, the absence of any accurate record of who made the classification decision, and why, may not be intentional but is certainly more than careless.

3. Prejudice

I also propose finding that the spoliation prejudiced Buster. Because Defendant did not establish a litigation hold, divining what the missing records might reveal is a useless exercise. *See Browder*, 187 F. Supp. 3d at 1299. The segregation logs and classification logs would be persuasive checks on the conflicting memories eyewitnesses to relevant events. Reverse engineering the content of required records through depositions has only generated more conflicting information. *See In re Gold King Mine*, 2022 WL 2230759, at *7 ("[I]t is unlikely [witnesses] will be able to remember the specific contents of each destroyed work order").

At best, knowing what conversations and actions transpired over Buster's segregation and cell conditions would facilitate speedy resolution of the matter. At worst, it would entrench the parties' respective positions further and direct their efforts toward trial preparation. Either way, it would reduce unnecessary confusion where greater certainty should exist. Therefore, I propose finding that Buster suffered actual prejudice from Defendants' grossly negligent failure to preserve the segregation and classification logs.

**B. Defendants' misconduct warrants lesser sanctions than default judgment or an adverse inference instruction.**

1. The *Ehrenhaus* factors do not support default judgment as a sanction.

Rule 37 authorizes sanctioning a party for failure to "obey an order to provide or permit discovery." *Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005); Fed. R. Civ. P. 37(b)(2). A wide range of sanctions up to dismissal or default judgment are available. *Procter & Gamble*, 427 F.3d at 727. The five *Ehrenhaus* factors guide courts deciding whether to impose dismissal or default judgment sanctions:

> (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned

the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ellis-Hall,* 2022 WL 3972093, at *4 (citing *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007)); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)). Dismissal sanctions should be used sparingly because the judicial system strongly prefers to resolve cases on their merits. *Ellis-Hall,* 2022 WL 3972093, at *4 (internal citation omitted).

### a. Prejudice to plaintiff

Earlier, I proposed finding that Defendants' discovery misconduct prejudiced Buster. Defendants have delayed resolution of this case, increased the time and money Buster spent on discovery motions, and created confusion around Buster's case strategy and valuation. *See Ellis-Hall*, 2022 WL 3972093, at *4 ("[I]ncreased costs and delays are valid reasons to find actual prejudice"). Buster's conditions of confinement claims in large part depend upon showing that the plumbing system needed serious repairs and affected her cell. Delaying disclosure of the Facility Assessment Report from April 2022 until after discovery terminated prejudiced Buster's investigation. The missing pass-down emails, segregation logs, and classification logs hamstrung her investigation into Defendants' awareness of and actions in response to her cell environment and medical conditions. *See* [Doc. 158-2]. The docket reflects that Court intervention has been necessary to sort out prolonged litigation disputes. Defendants' responses that Buster could have obtained this information from other sources rings hollow because Defendants were predominantly either the authors or intended recipients, and always the custodians, of the needed information.

### b. Interference with the judicial process

I also propose finding that Defendants' withholding and spoliation of evidence caused delays which interfered with the judicial process. If a party's actions cause a court "to expend unnecessary resources [conduct] can establish interference with the judicial process." *Ellis-Hall*,

2022 WL 3972093 at *5 (collecting cases). Over the course of a year, Defendants' failure to comply with discovery led to several court interventions. Buster filed her Motion to Compel in March 2023 [Doc. 69]; I granted the motion in large part in June 2023 [Doc. 90]; I allowed an extension for Defendants' objections to the order and production of supplemental discovery [Doc. 99]; I held an informal status conference to resolve a deposition issue [Doc. 108];  and the instant motions for sanctions and several dispositive motions were filed in early 2024 [Docs. 158, 160, 162, 164, 165, 166, 167, 168] (not counting associated motions such as page extensions). While dispositive motions would have been needed in any event, discovery disputes certainly delayed those filings. Though not egregious, these events lead me to conclude that Defendants have sufficiently "forced the court (and its staff) to handle their numerous extraneous filings, motions, and hearings." *Ellis-Hall*, 2022 WL 3972093 at *5 (citing *Ehrenhaus*, 965 F.2d at 921)).

### c.  Culpability of the litigant

As previously discussed, I propose finding that Defendants are culpable for the loss of documents which prejudiced Buster and interfered with the judicial process. I have proposed that the culpability rises to the level of gross negligence. Defendants present no cogent argument that the documents sought were outside their custody and control such that it is not their fault. *Compare XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *24 (D.N.M. Apr. 1, 2016) ("[I]f a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it").  At best, Defendants' culpability arises from incompetence to keep track of documents which even a careless person would better monitor.

Defendants suggest that a change in facility operators shortly before Buster's incarceration may have contributed to record loss, but they provide no evidentiary support. [Doc. 171, p. 1, 2].

Moreover, producing the Facility Assessment Report after discovery closed shows that they had access to this document but withheld it during discovery when it would have proved most useful to Buster's case preparation. Buster's preservation letter put Defendants on notice that a litigation hold should immediately be instituted but all evidence points to a near-complete failure to heed the letter. For these reasons and those described above, I recommend finding Defendants culpable.

### d.   Advanced warning and efficacy of lesser sanctions

The last two factors weigh in favor of Defendants and against default judgment. *See Romero*, 2023 WL 5844249, at *8.  First, Defendants were not previously warned that a default judgment sanction was on the horizon for further violations.  Although Defendants' management and communication may be "disorganized, inefficient, and costly" to themselves and court resources, it has not been sufficiently established that Defendants "willfully conceal[ed] any information[,] so a lack of warning cuts against default judgment." *Id.* (citing *Lee*, 638 F.3d at 1323). However, Defendants are hereby warned that further misrepresentations or other culpable discovery misconduct is likely to result in a default judgment recommendation.

In sum, the majority of the *Ehrenhaus* factors weigh against Defendants but not so heavily that default judgment against them is appropriate. Lesser sanctions can compensate Buster and, presumably, deter Defendants from future misconduct. Therefore, I propose the Court find that default judgment is not warranted. Nonetheless, I recommend the Court sanction Defendants through both monetary and non-monetary sanctions given that Defendants were already ordered to pay attorneys' fees in connection with Buster's previous Motion to Compel. *See* [Doc. 159].

### 2.   Sanctions are necessary to punish Defendants and compensate Buster.

I propose finding that sanctions are also warranted because Defendants spoliated evidence, demonstrated culpability, and prejudiced Buster. Spoliation sanctions should promote factual

accuracy, punish bad discovery behavior, and compensate the aggrieved party. *Browder*, 187 F. Supp. 3d at 1299. The severity of sanctions "should correspond to the willfulness of the spoliator's destructive act" and the opposing party's prejudice. *Lamb*, 2024 WL 2890539, at *3 (internal citation omitted). Defendants' extremely late disclosure of the Facility Assessment Report is also sanctionable for violating my order to compel and scheduling order.

However, I propose finding that an adverse inference instruction is not an appropriate sanction here. To warrant an adverse inference instruction, a party must show evidence of bad faith or intentional destruction of a document unfavorable to the spoliating party. *Browder*, 187 F. Supp. 3d at 1296; *see also Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) To find bad faith, a party must show some evidence of willful destruction. *Lamb*, 2024 WL 2890539, at *3 (citing *Browder*, 187 F. Supp. 3d at 1300 n. 6). In other words, "mere negligence in losing or destroying records" does not suffice because it "does not support an inference of consciousness of a weak case." *Id.* (citing *Aramburu*, 112 F.3d at 1407) (declining to impose an adverse inference in part because any bad faith inference was "undermined by the other attendance records being produced").

Buster proposes several lesser sanctions, including adverse inference instructions, in the alternative to default judgment:

(1) An instruction that informs the jury the evidence was destroyed despite notice of a potential lawsuit.
(2) An instruction that the jury can infer the missing evidence would have been unfavorable to the Defendants.
(3) Preclude any evidence or argument that the missing evidence would corroborate[] the Defendants' version of events.
(4) Preclude any evidence or argument that [Buster] did not complain about her conditions of confinement.
(5) An instruction that informs the jury the activities (e.g. meals, showers, recreation, cleaning supplies, telephone, laundry, hygiene, mail, commissary, and library) that should have been captured on the missing segregation logs, did not happen.

[Doc. 160, p. 17, 18].

I propose finding that Buster has not shown sufficient evidence of bad faith or intentional destruction to warrant an adverse inference sanction. While Buster contends that Defendants acted in bad faith, a jury instruction allowing an adverse inference must be justified by some willfulness evidence. *See Lamb*, 2024 WL 2890539, at *3. An adverse inference is a "powerful sanction" which "brands one party as a bad actor . . . open[ing] the door to a certain degree of speculation by the jury." *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008) (internal citation and quotation omitted). The gravitas of adverse inference is not commensurate to the Defendants' actions nor to Buster's prejudice. *See Lamb*, 2024 WL 2890539, at *3.

However, I do find that Defendants' carelessness and indifference toward preserving and disclosing evidence, combined with the resulting prejudice to Buster, merits sanctions. Defendants have given no legitimate excuse for the documents' apparent disappearance; the chaos and quality control issues associated with management of a small county detention center proffered as excuses are unavailing. *See Browder*, 187 F. Supp. at 1299; [Doc. 171]. Proper care of inmates is fostered, not inhibited, by competent record-making and -keeping.

3. <u>Recommended Sanctions</u>

**For the foregoing reasons, I recommend the Court impose all or some of the following sanctions:**

1) I recommend the Court permit Buster at trial to present evidence at trial that: she asked Defendants to preserve all relevant documentation shortly after the incident occurred; relevant documentation would include, at a minimum, two pass-through emails for each day that Buster was in custody, a classification log for Buster's initial cell assignment and

any subsequent classification change, and segregation logs as required by applicable state regulations and institution policies; that Defendants failed to create, maintain, or disclose any required pass-through emails or classification or segregation logs except those received by Buster through discovery; and that Defendants thereby deprived the jury of the ability to consider those required documents as part of their determination of the truth of the parties' claims or defenses or the witnesses' testimony. *See Browder* at 1299.

2) I recommend that the Court preclude Defendants from presenting any evidence, through witness testimony or exhibits or otherwise, that a record was created that corroborates any factual assertion disputing Buster's claims or supporting Defendants' defenses, unless: that specific record was timely disclosed to Buster, or; the Court finds that other considerations require the evidence to be admitted notwithstanding lack of timely disclosure of the document described.

3) I recommend that the Court instruct the jury that they may consider the Defendants' failure to create, maintain, or disclose required documents, along with all other evidence presented to them, and they may draw reasonable inferences from the absence of those required documents as they determine what actually happened in this case. I recommend the parties draft a proposed instruction to that effect and that they Court adopt that proposed instruction or its own instruction in its sound discretion.

4) I recommend that the Court reopen discovery for a limited period of time sufficient for Buster to conduct further discovery, including depositions, relevant to the Facility Assessment Report produced after discovery closed;

5) I recommend the Court award attorney fees and other expenses incurred by Buster in connection with these motions. I further recommend the Court allow Buster to submit

attorney's fees affidavits and allow Defendants to lodge objections prior to the Court's determination of a specific amount to be awarded.

**For the foregoing reasons, I further recommend the Court deny the following sanctions**:

6)  I recommend that the Court deny Buster's request for default judgment in both motions for sanctions [Docs. 158, 160] as discussed above;

7)  I recommend that the court deny Buster's request for an adverse inference because she has not shown evidence of bad faith as discussed above;

8)  I recommend the Court deny Buster's request to preclude Defendants from arguing or presenting evidence that Buster did not complain about her conditions of confinement. Buster will be given ample opportunity to cross examine on these subjects and thereby elicit favorable evidence which the jury may consider in drawing its own inference from the missing documents. *See Lamb*, 2024 WL 2890539, at *4 ("[C]ross-examination can patch holes in the record").

### IV.  CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** the Court **GRANT IN PART** and **DENY IN PART** Buster's motions for sanctions [Docs. 158, 160].

With respect to **Buster's first motion for sanctions [Doc. 158]** concerning the Facility Assessment Report, I recommend the Court **deny default judgment but reopen discovery** to allow additional discovery on that late-disclosed report.

With respect to **Buster's second motion for sanctions [Doc. 160]** concerning the pass down log emails, the classification logs, and segregation logs, I recommend the Court **deny default judgment and an adverse inference instruction** but **grant the opportunity to present evidence**

on the missing documents and **instruct the jury to draw their own inferences** on the lack of same.

With respect to **both motions,** I recommend **monetary sanctions** for the time Buster spent preparing her motions after submission of attorney's fees affidavits and objections thereto.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**